THE STATE OF OHIO, APPELLEE, *v.* WHITE, APPELLANT.

(No. 2655—Decided January 20, 1962.)

*Mr. Raymond Schmidt,* for appellee.
*Mr. James P. Jones,* for appellant.

CRAWFORD, P. J. Defendant appeals from his conviction for child stealing in violation of Section 2901.33, Revised Code. The

indictment charges "that Harry Dale White on or about the fifteenth day of November in the year one thousand nine hundred and sixty in the county of Montgomery, aforesaid, and state of Ohio did lead, take, carry or entice away a child under the age of 12 years, to wit: Edward Andrew Hock, age, nine (9) with intent unlawfully to detain or conceal such child from its natural mother, who had lawful charge and custody of said child; contrary * * *."

Defendant waived a jury and was tried by the court.

The child in question was defendant's stepson, defendant having married the child's mother, Mary R. White, on October 29, 1960.

The evidence shows that this child, along with four others, all by a former marriage of Mary R. White with Chester Hock, were, after the parents were divorced, residing with their mother at 426 East Sixth Street in the city of Dayton; that, while they were living there, defendant and the mother were married on October 29, 1960; that on the morning of November 15, 1960, the defendant and the mother had an argument about defendant's proposal to take Eddie, the child in question, out of school that day for a polio shot; that, about 2:00 p.m. on the same day, defendant took the child from Emerson School supposedly for that purpose; that the two went to a restaurant and to the B & J Market; that the mother appeared at the market and insisted that the child come home; that defendant stated, "we will be home after while sometime"; that instead of going home defendant and the child stayed that night at the Dayton Y.M.C.A.; that sometime the next day they proceeded to Columbus, Ohio, and stayed overnight there at the Y.M.C.A.; that they next proceeded to Cleveland, Ohio, where they stayed at a mission; and that on November 22 defendant called the mother collect from Cleveland, asked for money, and was thereupon apprehended.

There is evidence in the record of sexual misconduct by the defendant toward the child, which defendant denies. Defendant stated that he was attracted to the child because of his resemblance to defendant's deceased son.

The first error assigned is "that the trial court erred as a matter of law in admitting testimony by the defendant's wife, Mary R. White, relative to her having been given custody of

the subject child at a prior divorce hearing against her former husband.''

Section 2901.33, Revised Code, under which defendant was convicted, reads:

''No person shall lead, take, carry, decoy, or entice away a child under the age of twelve years, with intent unlawfully to detain or conceal such child from its parent, guardian, or other person having the lawful charge or custody thereof, or knowingly harbor or conceal a child so led, taken, carried, decoyed, or enticed away.

''Whoever violates * * * .''

Defendant insists that a certified copy of the custody order of the court in the divorce case is the best and, therefore, the only proper evidence of the mother's right to custody.

The state contends that the offense is committed if the child is taken with intent to detain or conceal it from *either* its parent, guardian, *or* other person having the lawful charge or custody thereof; that, only in the event the taking and detention are alleged to have been from a person other than the parent or guardian, is it necessary to prove custody; and that in any event there is a presumption that the parent with whom a child resides does have custody. With this contention we are disposed to agree. If one parent, having been granted by a court the sole and exclusive care, custody and control of a child, sees fit nevertheless to permit it to be temporarily with the other parent, could it reasonably be contended that any third party could, with impunity, take and conceal it from such latter parent, or that such act would not be a taking and concealing from both parents?

Some of the cases cited, it is true, stress the importance of a custody order as between divorced or separated parents, but not with respect to third parties. This child lived with the mother, as defendant well knew. Such status was sufficient so far as the defendant and all others, except perhaps the natural father, are concerned. No effort was made to disprove the mother's lawful custody.

The testimony of the mother was not objectionable, and its admission in no wise prejudiced the defendant.

The second assigned error is ''that the trial court erred as a matter of law in overruling the motion of defendant for a new trial.''

Two arguments are advanced in support thereof. One is that venue has not been proved. Although it is true that the state neglected to follow the accepted practice of proving venue explicitly, yet a review of all the facts shown, and of those properly cognizable by the court, dissipates any reasonable doubt that the act of taking the child with the intent to conceal it took place in the city of Dayton, the county seat of Montgomery County, Ohio.

Mary R. White, being questioned as to her marriage to the defendant, testified:

"Q. Where were you married? A. At the Central Baptist Church in Dayton.

"Q. After your marriage where did you go? A. We didn't go no place, we stayed in Dayton.

"Q. Where? A. Just at our house.

"Q. Is that 426 East Sixth Street, Dayton, Montgomery County, Ohio? A. Yes."

In the examination of the defendant, we find the following:

"Q. Mr. White, you have lived in Dayton, Ohio, how long? A. I come to Dayton in July of 1960."

Even without the references to the city of Dayton, the better and prevailing view appears to be that the court may take judicial notice of the geographical location of such things as street addresses, etc. 21 Ohio Jurisprudence (2d), 61, Evidence, Section 47. The same principle would apply to Emerson School, which obviously serves the area of the residence at 426 East Sixth Street in Dayton, Ohio.

There is also reference in the testimony that the defendant and the child walked from Emerson School to the restaurant at Hickory and Brown Streets and to the B & J Market in the vicinity of Burns Avenue and Brown Street and proceeded from there to the Dayton Y.M.C.A.

In our opinion, venue was adequately proved.

Defendant points out under this assigned error that the intent unlawfully to detain or conceal must coincide with the act of taking. In the case cited by the defendant of *Mayo* v. *State*, 43 Ohio St., 567, it was held that intent is an essential element of the crime of child stealing. Defendant testified the act and intent did not coincide. But the court was not bound by his statement if, in view of all the circumstances in evidence, it

found by the necessary degree of proof that the act and intent did in fact coincide. Such finding is adequately supported by the evidence in the record.

The second assigned error is without merit.

The third error assigned is "that the trial court erred as a matter of law in allowing the defendant's wife, Mary R. White, to testify against him."

This involves the following provision of Section 2945.42, Revised Code:

"Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness, or in case of personal injury by either the husband or wife to the other, or bigamy, or failure to provide for, or neglect or cruelty of either to their children under sixteen year of age * * * ."

It is argued that the term, "their children," means only the natural children of both parties. No authority is cited for so narrow a construction of this statutory provision, which was obviously intended for the benefit and protection of children. Nor has our search revealed such authority. On the contrary, we note with approval this comment by the court in *State* v. *Strome,* 26 N. P. (N. S.), 406, 407:

"* * * Unless a contrary rule is required in the interpretation of statutes, words indicating the plural may be applied in the singular sense, and the term 'their child or children' is the same as if it said 'his or her child or children.'

"In addition to that, words are to be given their ordinary meaning, and the child in this case would ordinarily be called the child of the defendant and her husband, even though the defendant was the stepmother."

Furthermore, the words and acts in question were said and done in the known presence *and* hearing of third parties competent to be, and who actually were, witnesses at the trial, namely, the subject child and Maurine Perry, an employee of the B & J Market.

The third assigned error is without merit.

The fourth assigned error is "that the trial court erred as a matter of law in holding that there was no relationship of

loco parentis between the defendant and the subject child, Eddie Hock.''

It is argued that because of such relationship the defendant had rights of custody giving him legal authority to do the things which he did.

''It is practically the universal rule that a stepparent, by virtue of that relationship alone, does not stand in loco parentis to a stepchild. This rule prevails in Ohio.'' 41 Ohio Jurisprudence (2d), 309, Parent and Child, Section 6. Cited to this text is the case of *Trustees of Bloomfield* v. *Trustees of Chagrin,* 5 Ohio, 315.

Defendant insists that he aided in the disciplining and religious training of the children and proffered other evidence such as purchasing of certain books for their use. He was unemployed and without funds, did not support them or the mother, had moved into their home instead of providing a home for them, and had actually been their stepfather for only 16 days before the alleged offense. There is considerable evidence that he abused the subject child sexually; if so, in that important respect his conduct was more evil than parental.

The trial court was well justified by the evidence in rejecting the contention that defendant stood in loco parentis to the subject child.

There is no merit in the fourth assigned error.

The fifth error assigned is ''that the trial court erred as a matter of law and to prejudice of the defendant in admitting testimony regarding the alleged sexual acts by defendant with the subject child.''

This evidence was in our opinion clearly admissible to show motive, intent, etc., under Section 2945.59, Revised Code.

We have read the decision of the trial court wherein it emphasized the motive arising out of defendant's attachment to the child because of its resemblance to his deceased son and specifically stated that it was not deciding the case upon grounds of morality. It is our opinion that the evidences of the good motive and the bad are equally admissible, and that there was no error prejudicial to the defendant in the admission of the evidence complained of.

Perhaps it should be observed that, although apparently not discussed in the briefs, the record contains evidence that a

year previous to the present offense defendant had committed a more sordid act in Columbus, Ohio, with a still younger boy. This evidence was in our opinion equally admissible.

No error prejudicial to the rights of the defendant appearing in the record, the judgment is affirmed.

*Judgment affirmed.*

KERNS and SHERER, JJ., concur.