THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* AL EUGENE BURTON, Defendant-Appellant.

Fourth District    No. 17207

Opinion filed November 25, 1981.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Edward Litak, State's Attorney, of Danville (Robert J. Biderman and James K. Horstman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:

Aggravated incest with both stepdaughters—starting at age five!

Can the wife testify to the stepfather's admissions of his acts against the two girls?

Yes—no privileged communication where the interests of the children are involved.

The jury verdict of guilty and the sentence of 6 years are affirmed.

Burton resided with his wife and their sons, T'Challa and A-Jay. Also living in the home were his wife's two daughters by a prior marriage. Burton was convicted of committing aggravated incest with the step-daughters, who were ages *eight* and *nine* at the time of trial in March 1981.

The nine-year-old testified that on the evening before the family left for its vacation in August 1980, her mother went to the laundromat and left her, defendant stepfather, and T'Challa at home. As she was trying on a new swimsuit that had been purchased for the vacation, defendant came into her room. After removing the swimsuit, she began to put on her pajamas, but defendant told her not to do so. He ordered T'Challa to go outside and went to another room to obtain a towel. He then proceeded to lie on top of her and have sexual intercourse with her. The girl stated that when defendant got up, he used the towel to wipe "yellow stuff" from the bed and from her vagina.

The girl also testified that this type of occurrence had taken place before and had been going on for four or five years. She was unable to estimate the number of times defendant had had intercourse with her during that period.

The eight-year-old testified that about a week before the family's August vacation, she, defendant, and A-Jay were at home while her mother was doing laundry. During the evening, defendant got on top of her and "put his penis in [her] vagina in the red part." After he got up, she went to the bathroom and defendant wiped her off with a wet towel.

To the prosecutor's question whether defendant had had intercourse with her before, the eight-year-old said, "I don't remember it, but it happened before." She did not know how long ago defendant had begun such activity with her.

Defendant's wife testified that she and her four children are now living with her mother in Pennsylvania. She stated that the family's vacation had been spent in South Bend, Indiana, where they visited their former pastor and his family, and during the vacation the girls told their mother about defendant's sexual activity with them. When she asked defendant about it, he at first denied the accusations and "wanted to whip them." The mother, however, insisted that they talk to the girls first. When the girls repeated the same allegations in the presence of defendant and their mother, defendant asked his wife to go with him to another room. He there admitted to her that the girls were telling the truth.

William Patrick Hartshorn, of the Vermilion County sheriff's office, testified that he had requested defendant to come in for questioning concerning an allegation of aggravated incest. Defendant told Hartshorn that in 1977 he had begun lying in bed with the nine-year-old (then age *five*), holding and fondling her and rubbing her legs with his hands. In

early 1978 he began fondling her genital area and inserting his finger in her vagina, and in late 1978 he began to have sexual intercourse with her.

In 1979 he began having intercourse with the eight-year-old. Defendant estimated that during 1979 and the first part of 1980, he had intercourse with the girls 10 to 12 times. In particular he described an incident which occurred in July 1980, while his wife was at the laundromat, leaving him at home with the eight-year-old. He had sexual intercourse with her by having her get on top of him and then inserting his penis in her vagina. Following his climax, he took the girl to the bathroom and cleaned her up. He told the girl he had done wrong and encouraged her to tell her mother so that he would be stopped from doing it in the future.

Testimony of Officer James Gooden, who was present during the interview with defendant, largely corroborated Hartshorn's testimony. He added that defendant had attempted to have intercourse with the nine-year-old in late 1977 but had been unable to penetrate her vagina.

The jury found defendant guilty on two counts of aggravated incest under section 11—10 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 11—10), which includes—within the definition of that crime—sexual intercourse between a man and his stepdaughter who is under age 18.

## I

■■ Defendant first contends that the trial court erred in allowing his wife to testify about his admission to her that he had had sexual intercourse with his stepdaughters. The State, on the other hand, contends that this testimony fell within one of the exceptions to the marital privilege. The relevant statute is section 6 of division XIII of "an Act to revise the law in relation to criminal jurisprudence," regarding witnesses (Ill. Rev. Stat. 1979, ch. 38, par. 155—1), which provides in part:

"In all criminal cases, husband and wife may testify for or against each other: provided, that neither may testify as to any communication or admission made by either of them to the other or as to any conversation between them during marriage, except in cases where either is charged with an offense against the person or property of the other, or in case of spouse abandonment, or *where the interests of their child or children are directly involved*, or as to matters in which either has acted as agent of the other." (Emphasis added.)

The parties agree that the resolution of this issue turns upon whether defendant's trial for aggravated incest can be classified as a case in which the interests of the children of defendant and his wife are directly involved. Initially, we observe that this exception to the marital privilege

should apply even where, as here, "children" of a couple are in fact the stepchildren of one spouse. Since the exception was obviously intended to benefit and protect children within a family relationship, it would be a violation of that legislative intention to make it applicable only where natural children are involved. *State v. White* (1962), 116 Ohio App. 522, 189 N.E.2d 160. See also *State v. Lounsbery* (1968), 74 Wash. 2d 659, 445 P.2d 1017.

Apparently no case has yet determined what our legislature meant in referring to the "interests" of a married couple's children. Defendant relies upon *People v. Bartell* (1944), 386 Ill. 483, 54 N.E.2d 700, *cert. denied* (1945), 324 U.S. 842, 89 L. Ed. 1404, 65 S. Ct. 588, but that case is not particularly helpful to him. Bartell was tried for the murder of his 21-month-old daughter. His wife was called as a court witness and testified to certain conversations she had had with him about the paternity of the child. The statute concerning the marital privilege in criminal cases was identical, in all relevant parts, to the present paragraph 155—1. The *Bartell* court concluded, based on the statute, that the trial court should have excluded this testimony.

That court did not, however, specifically address the question whether trial for the murder of a child is a case in which that child's interests are directly involved. In the case at bar, the State has specifically invoked that exception to the marital privilege, and the trial court relied upon it in admitting defendant's wife's testimony.

■■ Is an aggravated incest prosecution a case in which a child's interests are directly involved? To ask the question is to answer it. The Committee Comments to our aggravated incest statute indicate that the purpose of that provision was to prescribe criminal penalties for "those situations where parental authority may be abused in taking advantage of a young and dependent child." (Ill. Ann. Stat., ch. 38, par. 11—10, Committee Comments, at 311 (Smith-Hurd 1979).) Thus, that paragraph was intended as a means of protecting children from abuse. Defendant's stepdaughters clearly had an interest in being free from his sexual assaults, and his prosecution for aggravated incest was a means of insuring that they would not be subjected to further mistreatment from him. Consequently, the children's interests were directly involved in this case.

Even assuming that the *Bartell* court considered the exception to the marital privilege that we address here, we do not regard our decision as inconsistent with that case. The child/victim in *Bartell* was dead. As such, any interest she had in seeing defendant tried for a crime died with her. Had the child lived, and had defendant been prosecuted for battery or attempt murder, the case would have been analogous to the one at bar. As it stands, *Bartell* is readily distinguishable.

We also note that other courts construing marital privilege statutes have shown paramount concern for the public policy of protecting minors

from physical abuse. These courts, faced with statutes that excepted from the marital privilege testimony of a *spouse*/victim, have extended that exception to include cases in which the child of defendant and the spouse is a victim. (*State v. Ulin* (1976), 113 Ariz. 141, 548 P.2d 19; *People v. Allman* (1973), 41 App. Div. 2d 325, 342 N.Y.S. 2d 896; *Adams v. State* (Tenn. Crim. App. 1978), 563 S.W.2d 804.) Thus, even if our legislature had not provided for an exception to the marital privilege in cases in which the "interests" of children of a couple are directly involved, there would be strong authority for recognizing an exception where the children are victims of a crime perpetrated by one of the parents.

We therefore conclude that the trial court was correct in allowing defendant's wife to testify concerning conversations between her and defendant while they were married. (Even if the trial court had been in error in allowing this testimony into evidence, the error would have been harmless. The testimony of the girls and of Officers Hartshorn and Gooden overwhelmingly established defendant's guilt.)

## II

At the sentencing hearing, the trial judge observed that the two victims were "very small, very frightened, very insecure and, obviously, damaged children * * *." He found that defendant's conduct had "obviously injected severe psychological trauma on the victims, a serious psychological trauma which may well be carried with them throughout their lives." This finding rested solely upon the judge's observation of the victims at trial; no evidence in aggravation was presented at the sentencing hearing concerning the effect of the offenses on the victims.

There can be no doubt that the effect of a crime upon the victim is an aggravating factor which a sentencing court may properly consider. Indeed, the legislature has required that such information be included in presentence reports. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—2(a)(3).) In addition, section 5—5—3.2(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(1)) lists as an aggravating factor that "defendant's conduct caused or threatened serious harm." Courts have said that harm to a victim is properly considered under this provision. *People v. Robinson* (1981), 92 Ill. App. 3d 972, 416 N.E.2d 793.

Defendant contends, however, that the trial court erred in considering psychological trauma to the victims as an aggravating factor since there was no evidence of it in the record. We reject defendant's implication that a trial judge, at the time of sentencing, is to block from his mind all that he saw and heard at the time of trial. In fact, it is proper for a trial judge to search for all factors relevant to the proper sentence to be given to a defendant, provided that the information he considers is accurate and reliable. (*People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d

9.) As a human being experienced in seeing people of all ages testify in criminal trials, Judge Robinson acted quite properly in concluding that the victims' behavior in court was the result of psychological trauma, not just nervousness as defendant suggests. A trial judge is in the best position to evaluate the various circumstances affecting sentencing. (*People v. Cozzi* (1981), 93 Ill. App. 3d 94, 416 N.E.2d 1192.) Although the victims' demeanor and behavior were not, as such, spelled out in the black and white record, they were within the ken of the trial judge, both during questioning to determine their competency to testify and during the trial itself.

The contention that psychological trauma to a victim could not be considered as an aggravating factor without evidence of it in the record was recently rejected in *People v. Lloyd* (1981), 92 Ill. App. 3d 990, 416 N.E.2d 371. Defendant had *pled guilty* to indecent liberties with a three-year-old girl. The factual basis indicated that while he was babysitting with the child, he attempted sexual intercourse with her. Being unsuccessful, he licked her vagina and climaxed on her body. The State produced no evidence in aggravation at the sentencing hearing, but the trial court observed that the defendant had inflicted or attempted to inflict serious injury to another—though not bodily injury.

Defendant argued that the sentencing court had abused its discretion in considering harm to the victim where the existence or extent of harm was not shown. The *Lloyd* court rejected that argument, concluding that the record raised a reasonable inference that the young victim would suffer emotional injury as a result of defendant's actions. See also *People v. Gossage* (1980), 80 Ill. App. 3d 39, 399 N.E.2d 337; *People v. Matthews* (1979), 69 Ill. App. 3d 65, 387 N.E.2d 10.

■■ Under the authority of *Lloyd*, Judge Robinson would have been correct in considering psychological injury to defendant's stepdaughters even if they had not testified. Obviously, he was within his discretion in considering this factor when he had been able to see and hear them. We agree with the *Lloyd* court that a sentencing court may infer that a child/victim of sex abuse has sustained psychological damage.

### III

Defendant also argues that his sentence of 6 years (1 year less than the maximum) was an abuse of discretion. He points out that his presentence report shows that he has a high school education, plus one year of junior college, and that he has been accepted at Oakwood College, Huntsville, Alabama, to begin study for the ministry. The report also shows that he earns $8.95 an hour in his job with the Illinois Central Gulf Railroad. Two ministers of the Seventh Day Adventist Church testified concerning de-

fendant's religious conviction and sincerity in his desire to improve himself.

■■ A sentence will be disturbed on appeal only if it is the product of an abuse of discretion. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) The circumstances of this case clearly support this sentence. The record shows that defendant had repeatedly made sexual assaults upon his step-daughters, beginning as early as *age five*. The trauma they have sustained may well accompany them into adulthood and almost certainly will color the rest of their lives. We agree with the court that more than the minimum sentence is needed in this kind of case to deter others from engaging in such despicable, atrocious and damaging conduct.

The sentence was proper.

Affirmed.

GREEN and LONDRIGAN, JJ., concur.