THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES HENNESSEY, Defendant-Appellant.

Fourth District   No. 4—85—0574

Opinion filed May 15, 1986.

Daniel D. Yuhas and Judith N. Kirby, both of State Appellate Defender's Office, of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was charged in the circuit court of Sangamon County with the offense of attempt (murder) in violation of sections 8—4 and 9—1(a)(1) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4, 9—1(a)(1)). A jury was impaneled and the trial commenced. At the conclusion of defendant's direct examination, he offered to withdraw his plea of not guilty and enter a plea of guilty but mentally ill in accordance with section 115—2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 115—2). After admonitions under Supreme Court Rule 402 (87 Ill. 2d R. 402), the trial court accepted the plea and sentenced defendant to a term of imprisonment of 16 years. Within apt time defendant filed motions to withdraw the guilty plea and vacate the sentence, to stay execution of the sentence, and to reduce the sentence. A hearing was held on the motions, all of which were denied. Defendant appeals from the denial. We affirm.

The factual background, as developed by the evidence submitted prior to the plea, indicated that defendant had been divorced and was experiencing difficulties over the custody of his children. The custody had been awarded to his ex-wife, and he was of the opinion that the children were not being properly cared for. He had twice removed the children from their mother's home. After each occasion a hearing had

been held, and defendant was ordered to return them to their mother. On the second occasion he had refused to tell the court the whereabouts of the children and was ordered to jail for contempt. Three days later he produced the children in open court and was purged of the contempt.

Defendant's ex-wife had traveled from Peoria to Springfield by bus to pick up the children. Upon his release from jail defendant procured a gun and went to the bus station in Springfield. His ex-wife testified that she was there and defendant started shooting at her. She received shots in the hand, the right side, the right arm, and the back of the head. Defendant testified that he had no recollection of what happened after first seeing his ex-wife.

On defendant's motion he had been examined by a psychiatrist and a psychologist prior to trial. By stipulation of the parties their reports were submitted to the trial court at the time of the plea, and upon them the court found that there was a factual basis for a finding that defendant was mentally ill at the time of the offense.

At the sentencing hearing defendant reiterated much of his concern over his children, stating that he feared for their lives at the time he was required to turn them over to their mother. He also maintained that in the future he would attempt to remedy the situation through legal means.

In mitigation the court found that it was possible defendant was acting under strong provocation at the time of the offense and that it was also possible that his children would suffer hardship if he were imprisoned. In aggravation the court found that defendant's conduct caused or threatened serious harm. The court also stated that defendant's prior criminal record was not substantial, but his history of criminal activity was substantial.

On appeal defendant raises two issues: (1) that his plea was not voluntary because he believed that he would be sent to the Department of Mental Health and Developmental Disabilities rather than to the Department of Corrections, and (2) that his sentence was an abuse of discretion.

■ Upon a plea of guilty but mentally ill, a trial court is required to impose any appropriate sentence for the offense which could have been imposed on a defendant convicted of the same offense without a finding of mental illness. It is then required to commit the offender to the Department of Corrections, which will make the determination whether to transfer him to the Department of Mental Health and Developmental Disabilities. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—2—6.) In our opinion the trial court complied with the statute. The pertinent

part of the plea proceedings follows.

"THE COURT: Mr. Hennessey, would you step up here? (Defendant stands in front of the bench.)

THE COURT: Before determining whether or not to accept your plea, I need to further advise you that if you plead guilty but mentally ill, the Court may impose any sentence on you that's authorized by law which I have indicated to you for a Class X felony can be from anywhere from six years to thirty, years. And if you are sentenced to imprisonment which would be required since you are not eligible for probation, you would be committed to the Department of Corrections. The Department of Corrections would conduct further examinations and inquiry concerning your mental condition and you could be transferred to the Department of Mental Health and Developmental Disabilities. You understand? You could be committed to the Department of Mental Health. You understand what I'm saying?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, you would be sentenced, no question in this case that this sentence is a Class X felony, you would be sentenced to the penitentiary, the same as any guilty plea to this charge. When Department of Corrections receives you, they would conduct a further examination and you could be transferred to the Department of Mental Health. Understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And have you discussed that with your attorney?

THE DEFENDANT: Not—not talking about a penitentiary. You're talking about a mental institution?

THE COURT: You would be committed to the Department of Corrections. You would be sentenced there which would be a penitentiary.

MR. APPLETON [Defense Attorney]: Confusion lies—I have described to him Menard psychiatric mental unit, psychiatric unit.

THE COURT: Right. We would sentence you to the Department of Corrections. Department of Corrections would—or they would then have inquiry and examination made concerning the nature, extent, continuance and treatment of your mental illness and they could provide such counseling and treatment for you and transfer you to Mental Health if they saw fit. You un-

derstand that?

THE DEFENDANT: Yes, sir.

THE COURT: *You have any question about that?*

THE DEFENDANT: No, sir.

THE COURT: Knowing that, you still want to continue with your plea of guilty but mentally ill?

THE DEFENDANT: Yes."

Defendant argues that a fuller explanation was due to him, especially in view of his mental condition. The reports of the psychiatrist and the psychologist have not been made part of the record in this court, and we therefore have no way of determining exactly what their assessment of defendant might be. We do know that the trial proceeded after the reports were filed and a quotation from the psychiatrist's report appears in the presentence investigation report. The quotation states that defendant was not psychotic at the time of the offense and was likewise not psychotic at the time of examination. There is nothing to indicate that defendant was of subnormal intelligence or had any difficulty in understanding the English language. At the sentencing hearing defendant himself testified that he did not feel he was in need of psychiatric care.

At the hearing on the motion to withdraw the plea, defendant testified that he was sent to the Graham Correctional Center and from there to Menard. He stated that it was his understanding that he would be sent to a mental health facility after evaluation. Defense counsel testified that defendant was told under the plea he would be sent to a mental health facility if psychiatric care were indicated. Defendant agreed with this recollection of counsel but thought he would stay six to eight weeks at the Menard psychiatric unit and then be transferred to a mental health facility from which he could be released.

■ A defendant's subjective impressions as to what the result of a plea will be, in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds for vacating a plea. *People v. Hale* (1980), 82 Ill. 2d 172, 411 N.E.2d 867.

Further, in *People v. Lambrechts* (1977), 69 Ill. 2d 544, 558, 372 N.E.2d 641, 648, the supreme court stated:

"But unless that error [a more severe sentence] was induced by the State or by the judge's conduct, defendant is not entitled to relief."

We find nothing in the record which would warrant the beliefs which defendant held and certainly there is nothing to indicate that

they were nurtured by the State or by the trial judge. The admonitions were complete and nothing has been shown to justify withdrawal of the plea.

■■ Defendant next argues that the sentence demonstrates an abuse of discretion on the part of the trial court. He points to the custody battles with his ex-wife and the tumultuous environment in which he himself was raised. His father went to prison when defendant was a small child, and as an adolescent he was placed in a foster home. His father was killed by his sister, and his mother and brother have both required psychiatric treatment. None of this amounts to an excuse for the premeditated attack upon his ex-wife. The evidence showed that he first started firing at her from a distance of 10 feet. She fell to the floor unconscious and defendant fled. He returned a few moments later and crouched over her, aiming the gun at her head. She recovered consciousness just in time to avert her head partially and received a shot in the back of the head. Had this fortuitous circumstance not occurred, that wound might have been fatal and defendant charged with murder rather than attempt (murder). Defendant was shown to have prior convictions for aggravated assault and two weapons charges.

The trial judge had all of this before him. He is in the best position to evaluate the various sentencing criteria (*People v. Burton* (1981), 102 Ill. App. 3d 148, 429 N.E.2d 543), and his decision is entitled to great weight (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541).

The sentence range for attempt (murder), a Class X felony, is 6 to 30 years. Sixteen years is one year more than one-half the maximum. In view of the serious and premeditated nature of the crime and of defendant's prior record, we find no basis upon which to disturb the sentence.

The judgment and sentence of the circuit court of Sangamon County is affirmed.

Affirmed.

McCULLOUGH, P.J., and MORTHLAND, J., concur.