NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 210668-U

NO. 4-21-0668

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 4, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Coles County |
| CHRISTOPHER TORBECK, | ) | No. 19CF300 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Glenn, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held*:   (1) Defendant was not prejudiced by the trial court's failure to strictly comply with Illinois Supreme Court Rule 402(b) (eff. July 1, 2012).

(2) The trial court did not abuse its discretion in denying defendant's motion to withdraw guilty plea.

(3) The trial court did not impose an excessive sentence.

¶ 2   Defendant, Christopher Torbeck, pleaded guilty to one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) and was convicted of a second count of the same offense following a bench trial. The trial court subsequently sentenced defendant to consecutive terms of 26 years' imprisonment. Defendant appeals directly from the convictions and sentence, arguing (1) the trial court failed to properly admonish him pursuant to Illinois Supreme Court Rule 402(b) (eff. July 1, 2012), (2) the trial court erred in denying his

motion to withdraw guilty plea, and (3) the trial court imposed an excessive sentence. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4             In July 2019, the State charged defendant with two counts of predatory criminal sexual assault of a child (*id.*). In count I, the State alleged that defendant "placed his penis in the anus of [T].B." In count II, the State alleged defendant "placed his finger in the anus of [T].B." According to the charging documents, T.B. was 7 years old at the time of the alleged offenses; defendant was 30 years old.

¶ 5             In August 2019, privately retained defense counsel, Scott Ealy, filed a motion requesting the trial court appoint a clinical psychologist to conduct a fitness examination of defendant. Defense counsel attached an affidavit to the motion in which he stated, "[d]efendant may be unable to communicate with accuracy under certain circumstances and to make decisions in his own best interests." The court granted the motion and appointed Dr. Jerry L. Boyd to examine defendant and submit a written report of his findings to the court. After conducting the examination, Dr. Boyd concluded defendant met minimum standards for fitness to stand trial despite the "presence of mild intellectual disability in a person whose mental age is estimated to be around 10-12 years of age." Dr. Boyd noted that defendant's "baseline fitness can be enhanced by the use of basic language in explanations, repeating important concepts, breaking down complicated decisions into smaller manageable parts, and by offering simple choices with clear, brief explanations of consequences."

¶ 6             On October 16, 2020, defense counsel filed a motion to withdraw as counsel on the basis that "[t]he relationship of the parties [was] no longer governed by a contractual agreement between the parties for future services." At the hearing on his motion to withdraw,

counsel stated he was "past the point, unfortunately, of being compensated in this matter." The trial court denied the motion. On October 26, 2020, the day before the trial was scheduled to begin, defense counsel informed the court that defendant wished to waive his right to a jury trial. The court admonished defendant, accepted his waiver, and continued the proceedings.

¶ 7 Defendant's bench trial was conducted on February 25, 2021. The State introduced into evidence two video-recorded interviews conducted with T.B. and a video-recorded interview of defendant. In defendant's interview, he confessed to penetrating T.B.'s anus with his penis and finger. T.B. corroborated both penetrations in his recorded interviews. T.B. also testified *in camera*. T.B. testified defendant did not put his finger into T.B.'s "back private," and he did not recall telling the investigators otherwise. At the close of the State's case-in-chief, defense counsel requested an opportunity to speak with defendant. Following a 12-minute recess, counsel moved for a directed verdict as to both counts. The trial court denied the motion. Defense counsel then informed the court that defendant wished to plead guilty to count I and "argument with regard to Count 2." The trial court asked the State if it objected, and the State responded, "I'm sorry, but, Your Honor, it's just something I haven't encountered before, given that you have all of the evidence. If he is pleading guilty to Count 1, it is certainly not a negotiated plea and I'm not sure what else—I'm not sure what else to say on that." The trial court ultimately accepted defendant's guilty plea as to count I and found him guilty of count II beyond a reasonable doubt.

¶ 8 Defense counsel filed a motion for new trial in which he argued, in relevant part, "With regard to both Counts I and II, the Court erred when it failed to grant the Defendant's Motion for Directed Verdict at the close of the Plaintiff's presentation of its case." The trial court denied the motion.

¶ 9　　　　　On July 14, 2021, the trial court sentenced defendant to consecutive terms of 26 years' imprisonment. The trial court found in mitigation defendant had no prior criminal history and "was a person with an intellectual disability." The court also noted it had considered the evidence presented by defendant, which generally demonstrated that, for "[m]ost of his life, he was a very good citizen, but on one night, one unfortunate night, this good citizen was a monster." T.B.'s parents provided victim impact statements for the court's consideration. The parents explained that T.B. no longer trusts men, has had to attend counseling sessions, and suffers from "night terrors still every night" as a result of the assault. The court found in aggravation defendant's conduct caused or threatened serious harm, the sentence was necessary to deter others, and defendant held a position of trust with the minor. The court noted it took T.B. 20 minutes to speak for the first time in the video-recorded interview and he was shaking in fear during his trial testimony.

¶ 10　　　　　On July 28, 2021, defendant *pro se* filed a motion to withdraw guilty plea and reconsider sentence, stating, "I was told by my lawyer that [I] couldn't afford a jury trial and [I'm] not educated to know what is going on." The trial court appointed the public defender to represent defendant. Appointed counsel amended the motion to withdraw guilty plea to include claims that the trial court improperly admonished defendant in violation of Illinois Supreme Court Rule 402(b) (eff. July 1, 2012) and that defense counsel misadvised defendant about the consequences of pleading guilty to count I.

¶ 11　　　　　On October 29, 2021, the trial court conducted a hearing on defendant's motions to withdraw guilty plea and reconsider the sentence. Defendant called his former counsel, Scott Ealy. Ealy testified the State initially offered to recommend consecutive sentences of 25 and 20 years' imprisonment in exchange for defendant's agreement to plead guilty to both counts. The

State subsequently offered to dismiss count II if defendant entered an open plea of guilty to count I. Defendant rejected these offers. Ealy testified that on the day of the bench trial, defendant informed him that he wished to accept the State's second offer, but "the State indicated at that time that they were no longer willing to consider that offer." Ealy also testified as follows with respect to the discussion he had with defendant about pleading guilty to count I:

"Q. So part of your advice when you're speaking to [defendant] about pleading guilty to Count 1 is that perhaps even if he's convicted of the second count, the sentences wouldn't run consecutive?

A. We can always hope for a change in the law. Also, there would be the question of the appellate folks, appellate defense, scrutinizing the admonishments, which I think were a little bit inconsistent. But we knew that what the statute said, and I did review that with [defendant] with regard to consecutive sentences.

Q. But you left some hope with [defendant] that perhaps these sentences wouldn't be consecutive?

A. Yeah. Yeah. That's not the state of the current law as I explained, but you never know what might happen in the future as far as developments in the law, and you never know what might happen on appeal."

¶ 12 Defendant also testified at the hearing. He was unable to recall the reasoning behind the decision to plead guilty to count I. Defendant testified he did not know the meaning of the words, "waive," "consecutive," or "mandatory." Following presentation of the evidence and arguments, the trial court denied the motions to withdraw guilty plea and reconsider sentence.

¶ 13 This appeal followed.

¶ 14 II. ANALYSIS

¶ 15    On appeal, defendant argues (1) the trial court failed to properly admonish him pursuant to Illinois Supreme Court Rule 402(b) (eff. July 1, 2012), (2) the trial court erred in denying his motion to withdraw guilty plea, and (3) the trial court imposed an excessive sentence.

¶ 16                    A. Defendant Was Not Prejudiced by the Trial Court's
                           Failure to Strictly Comply With Rule 402(b)

¶ 17    Defendant first argues the trial court violated Rule 402(b) by failing to question him to confirm his guilty plea was not entered pursuant to an agreement with the State. Defendant asserts the court's Rule 402 violation prejudiced him by preventing him from entering a knowing and voluntary plea. In support of this assertion, defendant highlights Dr. Boyd's findings that he has a "mild intellectual disability" and the mental age of a 10- to 12-year-old child. The State does not challenge defendant's assertion that the trial court violated Rule 402(b) by failing to explicitly confirm there was no plea agreement with the State. Instead, the State contends defendant forfeited his argument by failing to object to the court's inadequate admonishments or, alternatively, defendant's argument fails because he cannot show he suffered prejudice.

¶ 18    Initially, we find defendant has not forfeited his Rule 402 claim. In *People v. Whitfield*, 217 Ill. 2d 177, 179 (2005), the defendant pleaded guilty to first degree murder and armed robbery and was sentenced to a term of imprisonment that included three years of mandatory supervised release (MSR). The trial court neglected to admonish the defendant of the MSR term before accepting his plea, in violation of Rule 402. *Id.* at 180. The defendant in *Whitfield* did not object to the court's improper admonishment or raise the issue in a motion to withdraw his guilty plea. *Id.* Nonetheless, the supreme court rejected the State's argument that the defendant had forfeited the Rule 402 claim. *Id.* at 188. It reasoned that "it would be

incongruous" to hold the defendant had forfeited the right to bring the claim "because he did not object to the circuit court's failure to admonish him. To so hold would place the onus on defendant to ensure his own admonishment in accord with due process." *Id.*

¶ 19        Here, it is undisputed that, like the defendant in *Whitfield*, defendant did not object to the trial court's admonishments. However, like in *Whitfield*, defendant did not have an obligation to object to the imperfect admonishments in order to be able to challenge them on direct appeal or in a postconviction petition. Thus, we will address the merits of defendant's Rule 402 claim.

¶ 20        Rule 402 provides the following in relevant part:

> "The court shall not accept a plea of guilty without first determining that the plea is voluntary. If the tendered plea is the result of a plea agreement, the agreement shall be stated in open court. The court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea." Ill. S. Ct. R. 402(b) (eff. July 1, 2012).

"Our supreme court has consistently held that Rule 402 requires only substantial, not literal, compliance with its provisions ***." *People v. Baker*, 133 Ill. App. 3d 620, 622 (1985). "[T]he failure to properly admonish a defendant, standing alone, does not automatically establish grounds for reversing the judgment or vacating the plea. [Citation.] Rather, a reviewing court focuses on whether the guilty plea was affirmatively shown to have been made voluntarily and intelligently." *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009). "[A]n imperfect admonishment is not reversible error unless real justice has been denied or the defendant has been prejudiced by

the inadequate admonishment." *Whitfield*, 217 Ill. 2d at 195. This court reviews *de novo* whether the trial court complied with Rule 402. See, *e.g.*, *People v. Chavez*, 2013 IL App (4th) 120259, ¶ 14.

¶ 21    Here, while we agree with the parties that the trial court failed to strictly comply with Rule 402(b) by failing to specifically ask defendant whether his guilty plea was entered pursuant to an agreement with the State, we find reversal is not warranted under the circumstances, as the trial court substantially complied in its admonishments and defendant has failed to demonstrate the court's failure to provide verbatim admonishments prejudiced him.

¶ 22    First, it appears the trial court substantially complied with Rule 402 when it admonished defendant prior to accepting his guilty plea. Although the court did not "confirm *** that there [was] no [plea] agreement" as set forth in Rule 402 by making such specific inquiry, it did question defendant whether there were any promises made to get him to plead guilty to count I. Ill. S. Ct. R. 402(b) (eff. July 1, 2012). Defendant confirmed there were no such promises made. We find it difficult to imagine how a plea agreement could exist in the absence of any promises. The language of Rule 402 itself presupposes plea agreements will consist of promises. See Ill. S. Ct. R. 402(b) (eff. July 1, 2012) ("The court *** shall determine whether *** any promises, apart from a plea agreement, were used to obtain the plea."). Thus, the court's ascertainment that *no* promises were made to induce defendant's guilty plea essentially confirmed there was no plea agreement.

¶ 23    Second, our review of the record leads us to believe defendant entered his plea knowingly and voluntarily. According to defense counsel's testimony at the hearing on the motion to withdraw guilty plea, defendant rejected the State's initial plea offer of consecutive sentences of 25 and 20 years' imprisonment on counts I and II, respectively. Defendant also

- 8 -

rejected a second offer to enter an open plea of guilty on count I in exchange for the dismissal of count II. On the day of trial, defendant indicated he wished to accept the State's second offer, but the State responded it was "no longer willing to consider that offer." The State proceeded to present its case-in-chief, which included defendant's video-recorded confession to both counts. After the State rested, defendant met with trial counsel during a short recess. Defendant then informed the court he intended to plead guilty to count I. The trial court asked the State if it objected, and the prosecutor responded, "I'm sorry, but, Your Honor, it's just something I haven't encountered before, given that you have all of the evidence. If he is pleading guilty to Count I, it is certainly not a negotiated plea and I'm not sure *** what else to say on that."

¶ 24        Based on the above, we find defendant is unable to demonstrate his plea was not entered knowingly and voluntarily. The State clearly indicated prior to trial that it was "no longer willing to consider [the second plea] offer." Then, when defendant indicated he wished to plead guilty to count I after the State had presented its case-in-chief, the State responded, "If he is pleading guilty to Count I, it is certainly not a negotiated plea." Defendant, in arguing that his plea was not knowing and voluntary, does not point to anything in the record that suggests he actually believed he was pleading guilty pursuant to an agreement with the State. Instead, he merely highlights Dr. Boyd's findings and his own testimony at the hearing on the motion to withdraw guilty plea that he did not understand the meaning of the word "negotiated." This is not enough to make us doubt that defendant's guilty plea was knowing or voluntary. Accordingly, we conclude defendant has failed to demonstrate he was prejudiced by the trial court's failure to give verbatim Rule 402 admonishments.

¶ 25        B. The Trial Court Did Not Err in
Denying Defendant's Motion to Withdraw Guilty Plea

¶ 26　　　　Next, defendant argues the trial court erred in denying his motion to withdraw guilty plea because the plea was "tainted by ineffective assistance of counsel." Specifically, defendant contends counsel was deficient in erroneously advising him (1) he could challenge the conviction on count I despite pleading guilty to that count and (2) there was " 'hope' " the "mandatory consecutive sentences would eventually run concurrently." He asserts he was prejudiced by counsel's deficient performance because, absent counsel's erroneous advice, he would not have pleaded guilty given he had a plausible defense to count I—namely, the predatory criminal sexual assault of a child statute is unconstitutional as applied to him because he has "the mental development of a 10[-] to 12-year-old child." "The decision to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the circuit court and, as such, is reviewed for abuse of discretion." *People v. Baez*, 241 Ill. 2d 44, 109-10 (2011).

¶ 27　　　　A defendant does not have an absolute right to withdraw a guilty plea. See, *e.g.*, *People v. Jamison*, 197 Ill. 2d 135, 163 (2001). Instead, he "must show a manifest injustice under the facts involved." *Delvillar*, 235 Ill. 2d at 520. "The decision of the trial court will not be disturbed unless the plea was entered through a misapprehension of the facts or of the law ***." *Id.* "Where the defendant has claimed a misapprehension of the facts or of the law, the misapprehension must be shown by the defendant." *Id.* "Where the plea of guilty was entered *** in consequence of misrepresentations by counsel[,] *** the court should permit the withdrawal of the plea of guilty and allow the accused to plead not guilty." (Emphasis omitted and internal quotation marks omitted.) *People v. Manning*, 227 Ill. 2d 403, 412 (2008). "Whether [the] defendant's plea was knowingly and voluntarily made depends on whether the defendant had effective assistance of counsel." (Internal quotation marks omitted.) *Id.*

¶ 28        Our supreme court has adopted the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to determine whether a defendant was denied the effective assistance of counsel in entering a guilty plea. See, *e.g.*, *Manning*, 227 Ill. 2d at 412. To succeed on an ineffective-assistance claim, "a defendant must show (1) counsel's representation fell below an objective standard of reasonableness (deficiency prong) and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different (prejudice prong)." *People v. Boyd*, 2018 IL App (5th) 140556, ¶ 16. "An attorney's conduct is deficient if the attorney failed to ensure that the defendant's guilty plea was entered voluntarily and intelligently." *People v. Hall*, 217 Ill. 2d 324, 335 (2005). For purposes of the prejudice prong, "a guilty-plea defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *People v. Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "A conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice." *People v. Valdez*, 2016 IL 119860, ¶ 29. "Rather, the defendant's claim must be accompanied by either a claim of innocence or the articulation of a plausible defense that could have been raised at trial." *Hall*, 217 Ill. 2d at 335-36.

¶ 29        Here, defendant is unable to demonstrate ineffective assistance of counsel because he has failed to satisfy the deficiency prong of the *Strickland* test. As state above, defendant contends counsel was deficient in erroneously advising him (1) he could challenge the conviction on count I despite pleading guilty to that count and (2) there was " 'hope' " the "mandatory consecutive sentences would eventually run concurrently." However, both of these contentions are refuted by the record. In arguing counsel misadvised him regarding his ability to later challenge the conviction on count I, defendant cites his motion for new trial, in which defense

- 11 -

counsel states, "With regard to both Counts I and II, the Court erred when it failed to grant the Defendant's Motion for Directed Verdict at the close of the Plaintiff's presentation of its case." This one sentence, contained in a motion filed *after* defendant had entered his guilty plea, hardly amounts to an affirmative showing that counsel erroneously advised him, prior to pleading guilty, that he would be able to challenge his conviction on appeal.

¶ 30 As for the contention counsel advised him there was " 'hope' " the mandatory consecutive sentences would eventually run concurrently, defendant cites to a portion of counsel's testimony at the hearing on the motion to withdraw guilty plea. In relevant part, when asked if he "left some hope with [defendant] that perhaps these sentences wouldn't be consecutive[,]" counsel answered, "Yeah. Yeah. That's not the state of the current law as I explained, but you never know what might happen in the future as far as developments in the law." Thus, contrary to defendant's assertion that counsel advised him his consecutive sentences may "eventually run concurrently," the record shows counsel advised him, correctly, that his sentences were required to run consecutively by law, and the only hope in them being served concurrently at some point was through a change in the law. Thus, because defendant is unable to demonstrate counsel affirmatively misadvised him, he cannot show counsel performed deficiently and his ineffective assistance claim necessarily fails. See, *e.g.*, *Boyd*, 2018 IL App (5th) 140556, ¶ 19 ("Both prongs under *Strickland* must be satisfied in order to succeed on a claim of ineffective assistance, and the failure to satisfy either prong will be fatal to the claim. [Citation.] Therefore, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one."). Accordingly, we find the trial court did not abuse its discretion in denying defendant's motion to withdraw guilty plea.

¶ 31 C. The Trial Court Did Not Impose an Excessive Sentence

¶ 32        Finally, defendant argues the trial court imposed an excessive sentence. Defendant contends the trial court improperly relied on two factors in aggravation: (1) the need for deterrence and (2) defendant's conduct caused or threatened serious physical injury. Defendant further contends the court did not give sufficient weight to several mitigating factors, such as his lack of a criminal history, his intellectual disability, and the fact he pleaded guilty to one of the charges.

¶ 33        "The Illinois Constitution provides penalties are to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *People v. Daly*, 2014 IL App (4th) 140624, ¶ 26 (citing Ill. Const. 1970, art. I, § 11). "This constitutional mandate calls for balancing the retributive and rehabilitative purposes of punishment, and the process requires careful consideration of all factors in aggravation and mitigation." *Id.* The factors to consider include, "*inter alia*, the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors such as the lack of a prior record, and the statute does not mandate that the absence of aggravating factors requires the minimum sentence be imposed." *Id.*

¶ 34        Reviewing courts must give "great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). "The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character,

- 13 -

mentality, social environment, habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). "A reviewing court may not alter a defendant's sentence absent an abuse of discretion ***." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). An abuse of discretion occurs when the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210.

¶ 35        Here, defendant was convicted of two counts of predatory criminal sexual assault of a child. This offense is a Class X felony punishable by a sentence of between 6 and 60 years' imprisonment. 720 ILCS 5/11-1.40(a)(1), (b)(1) (West 2018). The trial court must impose consecutive sentences when a defendant is convicted of multiple counts of predatory criminal sexual assault of a child. 730 ILCS 5/5-8-4(d)(2) (West 2018). Thus, defendant faced a sentencing range of 12 to 120 years' imprisonment. Defendant's aggregate sentence of 52 years' imprisonment was 40 years above the minimum and 68 years below the maximum.

¶ 36        The record shows the trial court carefully considered the applicable mitigating and aggravating factors in imposing its sentence. Specifically, the court found in mitigation that defendant had no prior criminal history and he "was a person with an intellectual disability." In aggravation, the court found defendant's conduct caused or threatened serious harm, the sentence was necessary to deter others from committing the same offense, and defendant held a position of trust with the victim. The court also noted it had considered the evidence defendant presented at the sentencing hearing, which demonstrated that "[m]ost of his life, he was a very good citizen, but on one night, one unfortunate night, this good citizen was a monster." The court explicitly stated it had considered defendant's lack of criminal history and his intellectual

disability. That the court took these factors into consideration may be inferred from the fact it imposed a sentence 68 years below the maximum. However, the court was also required to consider the seriousness of the offense and the harm it caused to the minor victim. Based on the court's careful consideration of the applicable factors and evidence presented, we cannot say it abused its discretion in sentencing defendant.

¶ 37　　　　　In arguing to the contrary, defendant asserts it was improper for the court to consider in aggravation the need for deterrence and that his conduct caused or threatened serious physical harm. Defendant cites *People v. McKinley*, 2020 IL App (1st) 191907, in support of the former assertion. In *McKinley*, the First District found the trial court had abused its discretion in sentencing the 16-year-old defendant to 39 years' imprisonment for first degree murder. *Id.* ¶ 91. It reasoned, in part, the trial court had placed improper weight on the need for deterrence because, as the Supreme Court found in *Montgomery v. Louisiana*, 577 U.S. 190, 207 (2016), "deterrence is diminished in juvenile sentencing because juveniles' recklessness, immaturity, and impetuosity make them less likely to consider possible punishment." (Internal quotation marks omitted.) *McKinley*, 2020 IL App (1st) 191907, ¶ 89. *McKinley* is readily distinguishable in that the defendant in that case was a juvenile, whereas here, defendant was 30 years old when he committed the instant offenses. Although defendant argues the rationale in *McKinley* should apply to his case with equal force considering his intellectual disability, he fails to cite any authority in support of this assertion, and we reject his argument.

¶ 38　　　　　Defendant also argues it was improper for the trial court to consider in aggravation that his conduct caused or threatened serious "physical" harm because "T.B. was examined at the hospital the day after the offenses and the results of the penile and rectal examinations indicated absolutely no physical abrasions or injuries to T.B. as a result of the

instant offenses." Initially, we note the court did not find defendant's conduct caused or threatened serious "physical" harm. Instead, the court found his conduct caused or threatened serious harm: "With regard to factors in aggravation, I agree with the State that *** [d]efendant's conduct caused or threatened serious harm—that's Factor Number 1—and the evidence has shown that today." See 730 ILCS 5/5-5-3.2(a)(1) (West 2018) (A sentencing court may consider in aggravation that "the defendant's conduct caused or threatened serious harm.").

¶ 39        Moreover, the record supports the trial court's reliance on this factor in aggravation. When determining whether the defendant's conduct caused or threatened serious harm, the sentencing court is permitted to consider both physical and psychological harm. See, *e.g.*, *People v. Calva*, 256 Ill. App. 3d 865, 875 (1993); *People v. Burton*, 102 Ill. App. 3d 148, 154 (1981). Here, the evidence presented at the sentencing hearing shows T.B. suffered serious psychological harm as a result of the assault. He no longer trusts men and can only have female teachers. T.B. also had to begin counseling and suffers from "night terrors *** every night." The court further described how terrified the minor was during his video-recorded interview and his testimony at trial. Therefore, the trial court did not err in finding defendant's conduct caused serious harm to T.B. beyond that which is inherent in the offense.

¶ 40        Finally, defendant argues the trial court did not properly consider in mitigation that he had no prior criminal history, had an intellectual disability, had been a "very good citizen," and pleaded guilty to count I. As discussed above, the trial court explicitly stated it had considered the first three factors listed by defendant. With respect to the fact defendant pleaded guilty to one of the counts, we note, "[t]he trial judge is not required to detail precisely for the record the exact process by which she determined the penalty nor is she required to articulate her consideration of mitigating factors." *Quintana*, 332 Ill. App. 3d at 109. Moreover, defendant

only pleaded guilty after T.B. was forced to testify and recount the crime defendant committed against him. Thus, defendant has failed to show the trial court erred in balancing the applicable mitigating and aggravating factors. We find the trial court did not abuse its discretion in sentencing defendant to 52 years' imprisonment.

¶ 41                                III. CONCLUSION

¶ 42            For the reasons stated, we affirm the trial court's judgment.

¶ 43            Affirmed.