Docket No. 104300.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PATRICK L. MANNING, Appellant.

*Opinion filed February 7, 2008.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Defendant, Patrick Manning, entered an open plea to the charge of residential burglary on April 19, 2004. Because of defendant's extensive criminal history, he was subject to Class X sentencing of up to 30 years in prison. 730 ILCS 5/5–5–3(c)(8) (West 2002). The circuit court of Du Page County imposed a sentence of 22 years.

Following sentencing, defendant filed motions to withdraw his guilty plea and reconsider his sentence. Relevant before this court is defendant's allegation in his motion to withdraw his plea that the plea was not knowing and voluntary because he was denied effective assistance of counsel. Defendant asserts that counsel was ineffective for failing to advise him on the possibility of pleading guilty but mentally ill (GBMI) pursuant to section 113–4(d) of the Code of

Criminal Procedure of 1963 (725 ILCS 5/113–4(d) (West 2002)), despite defense counsel's awareness of defendant's pronounced history of mental-health and addiction issues. The circuit court denied defendant's motion to withdraw his guilty plea and the appellate court affirmed. 371 Ill. App. 3d 457. For the reasons that follow, we affirm the judgment of the appellate court.

## BACKGROUND

Defendant states that he is a man with a troubled past. According to the pre-plea report, defendant was adopted when he was 18 months old. His adoptive parents were both physically and emotionally abusive. Presumably as a result of this abuse, defendant was placed in a number of foster homes. At the age of 12, defendant began abusing alcohol. That same year, defendant was introduced to marijuana. At the age of 14, defendant's adoptive parents kicked him out of their home because he was learning disabled and because they were unable to control him. In 1987, at the age of 17, defendant was adjudicated delinquent after being arrested for theft under $300 and burglary. Also in 1987, defendant attempted suicide for the first time and began using heroin. In 1988, defendant tried crack cocaine for the first time. In 1989, defendant was convicted of residential burglary and sentenced to 4 years' probation and 60 days' periodic imprisonment. In 1990, defendant was sentenced to four years in the Department of Corrections (Department) for an attempted armed robbery. In June of 1992, defendant began a period of mandatory supervised release. In October of 1992, defendant was arrested for theft. In December of 1992, he was arrested for unlawful use of a weapon by a felon. For these offenses, defendant was convicted and sentenced to a concurrent term of two years in the Department. In 1994 defendant was sentenced to four years' imprisonment after being convicted of three separate counts of burglary. In 1996, defendant was convicted of attempted possession of a controlled substance and was sentenced to 21 days in jail. In 1997, defendant was convicted of theft and driving while license suspended (60 days in jail, a year of conditional discharge, and $100 in restitution); battery and resisting a peace officer (20 days in jail); and three separate counts of residential burglary for which defendant received 12 years' imprisonment in the Department. In June 2003, defendant began a period of supervised

release. Defendant's projected discharge date from supervised release was June of 2005.

After being released in June, defendant moved in with his fiancée. Following an argument with his fiancée at the end of July, defendant attempted suicide, by slashing his wrists deeply enough to require multiple sutures. Defendant was hospitalized briefly, but ultimately signed himself out of the hospital against his doctor's advice. Around this time, defendant also resumed his abuse of drugs and alcohol, which had been in remission while defendant was incarcerated. Defendant states that he began substituting heroin for alcohol because his fiancée did not like his drinking. Defendant stated that when he started, he spent approximately $10 per day on heroin. However, by the time of his arrest, his habit had increased to $80 per day.

In October of 2003, defendant attempted to seek treatment for his substance abuse issues. He and his fiancée went to Central DuPage Hospital and filled out paperwork for defendant to receive treatment. However, defendant claims he was not accepted as a patient because he did not have insurance to pay for the treatment.

On November 14, 2003, just six months after his supervised release began, defendant lapsed back into his previous criminal behavior. On that date, just before 11 a.m., Carla Page returned to her home in Wheaton, Illinois, to find defendant, who was a stranger to her, standing in her kitchen. She screamed, ran from her home, and called the police. Page witnessed defendant climb into his fiancée's green Dodge van and drive away. Page relayed this information to the police, as well as the van's license plate number.

Wheaton police officers, responding to Page's call, located the van being driven a short distance from the crime scene. Officers in two fully marked squad cars verified that the license plate number given by Page matched the license of the van that they were following and attempted to perform a traffic stop. Defendant initially complied with the officers and pulled the van to the side of the road. However, after the officers exited their vehicles and began to approach defendant, he drove away. The officers chased defendant for a little over four miles as he wove through traffic at speeds reaching 70 miles per hour. Defendant then abandoned the vehicle on a residential lawn and attempted to abscond on foot. Officers continued their pursuit and

defendant surrendered approximately one block from where he abandoned the van.

Police searched the van and in doing so located a number of items that had been taken from Page's home. Additional items of jewelry were later found in the rear of the squad car that was used to transport defendant from the scene of his arrest to the jail. Page identified the items found in both the van and the squad car as items taken from her home. Defendant was charged with residential burglary, fleeing and eluding, resisting a peace officer, and theft.

While in jail and awaiting further action in his case, defendant was examined by Dr. Corcoran and prescribed Sinequan and Prozac to address his mental-health issues. Defendant was also, upon court order, seen and evaluated by Dr. Murray, a licensed psychologist. Dr. Murray's report reiterates the preceding facts and stresses that defendant "presents a significant risk for suicide attempt, should his situation change, such as after his sentence." In terms of a formal diagnosis, Dr. Murray noted that defendant meets the criteria for "Major Depressive Disorder, Recurrent; Polysubstance Dependance including Heroin, Cocaine and Alcohol [*sic*] in Remission in a Controlled Environment; *** and Antisocial Personality Disorder." In concluding, Dr. Murray noted that defendant presented a continued risk of a suicide attempt and that "[defendant] will require continued psychiatric and psychological services certainly to include antidepressant medications." Dr. Murray stated that defendant would benefit from a drug dependance treatment plan and that this plan must "accommodate [defendant's] Depressive Disorder, need for medication, and criminal thinking."

Attorney Holman was appointed as defendant's public defender and assisted defendant in applying for drug court. On February 3, 2004, the court denied defendant's application for drug court. The court specifically found that defendant was ineligible for drug court because he was subject to a parole hold and because of his prior convictions for violent crimes. On February 9, the court file stamped a letter from defendant asking that Holman be dismissed and outside counsel be appointed. Thereafter, attorney Zahrieh, who is also with the public defender's office, agreed to represent defendant.

Because of defendant's extensive criminal history, he was eligible for a Class X sentence of 6 to 30 years in prison. See 730 ILCS

5/5–5–3(c)(8) (West 2002). Through trial counsel, defendant was offered the opportunity to plead guilty in exchange for a recommendation by the State of 20 years in prison. Defendant rejected this offer. Instead, defendant entered an open plea hoping for a sentence between 8 and 15 years.[1] The State requested that defendant receive a 24-year sentence. Trial counsel argued that defendant was a man in need of help and that a more reasonable sentence was appropriate so that he would have a more substantial opportunity to rehabilitate himself and receive the help he desired. Defendant himself spoke at length about his need for help and his belief that the system has failed him. Defendant incorporated the arguments that the State had made in requesting a 24-year sentence and acknowledged the truth of his criminal history, but explained to the court that he needed help and positive people in his life, and asked for the court's mercy. Defendant received a sentence of 22 years in prison.

In imposing the sentence, the trial court noted that this was a more serious case than that of retail theft or of possession of a controlled substance. This was a case of residential burglary where defendant ransacked the victim's home, was still present when the victim returned, took a substantial quantity of items from the home, and led police on a high-speed chase. The court noted that defendant's criminal history was "abysmal" with "ten prior adult felony convictions, one prior juvenile adjudication for a felony, four separate times in and out of the Department of Corrections, sentences of four years, two years, four years, and the last sentence of twelve years in the Department of Corrections." Accordingly, the court described defendant as a "career criminal." The court further noted that given defendant's history, he could be sentenced to 30 years in prison and was "probably an appropriate candidate for that type of sentence." The court noted, however, that in mitigation the defendant had pleaded guilty and had participated in a number of programs in the county jail. The court then imposed a sentence of 22 years with credit for 190 days served and a recommendation to the Department that

---

[1]Before the appellate court, defendant argued that his plea was not knowing and voluntary because trial counsel allegedly advised defendant that he would not receive more than 15 years. That issue, however, was rejected by the appellate court and is not raised in the present appeal.

defendant receive drug treatment and psychiatric and psychological services while in prison.

Thereafter, defendant filed motions to withdraw his plea and to reduce his sentence. Counsel was appointed to aid defendant in these motions. Defendant argued that he should be allowed to withdraw his plea for two reasons. First, defendant alleged that his trial counsel was ineffective in that she improperly advised defendant on the length of sentence that he was likely to receive. Second, defendant argued that trial counsel was deficient because she failed to investigate and advise defendant on the possibility of pleading guilty but mentally ill (GBMI), as allowed under section 113–4(d) of the Code (725 ILCS 5/113–4(d) (West 2002)). In a hearing before the trial court, trial counsel testified that she did not advise defendant on the possibility of pleading GBMI because, unlike a finding that defendant was not guilty by reason of insanity, GBMI did not affect the sentencing range that defendant was eligible to receive.

The trial court denied both motions and held that defendant's plea was knowing and voluntary. Defendant appealed the denial of his motion to withdraw his plea and presented the identical two arguments before the appellate court. The appellate court affirmed the judgment of the trial court and found that defendant's plea was knowingly and voluntarily entered. Before this court, defendant argues only that trial counsel was ineffective for failing to advise him on the possibility of pleading GBMI.

Ordinarily, the decision whether or not to allow a defendant to withdraw his guilty plea is a matter within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). A defendant does not have an absolute right to withdraw his guilty plea (see *People v. Artale*, 244 Ill. App. 3d 469, 475 (1993)), but a defendant should be allowed to withdraw his plea where his plea was not constitutionally entered. Where " 'the plea of guilty was entered *** in consequence of misrepresentations by counsel *** the court *should permit* the withdrawal of the plea of guilty and allow the accused to plead not guilty.' " (Emphasis added.) *Davis*, 145 Ill. 2d at 244, quoting *People v. Morreale*, 412 Ill. 528, 531-32 (1952). A defendant may challenge the constitutionality of his guilty plea either by claiming that he did not receive the benefit of the bargain he made with the State or by alleging

that the plea of guilty was not made voluntarily or with full knowledge of the consequences. *People v. Whitfield*, 217 Ill. 2d 177, 183-84 (2005).

In the present case, because defendant entered an open plea, defendant must demonstrate that his plea was not knowing and voluntary. Whether defendant's plea was knowingly and voluntarily made "depends on whether the defendant had effective assistance of counsel." *People v. Pugh*, 157 Ill. 2d 1, 14 (1993), citing *People v. Correa*, 108 Ill. 2d 541, 549 (1985).

This court has adopted the two-part test found in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), to determine if a defendant was denied effective assistance of counsel in entering his guilty plea. *People v. Jones*, 144 Ill. 2d 242, 253-54 (1991). "To establish that a defendant was deprived of effective assistance of counsel, a defendant must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result." *Pugh*, 157 Ill. 2d at 14.


ANALYSIS

Defendant alleges that trial counsel was deficient in not researching and advising defendant of the possibility of pleading GBMI and that, as a result of that deficiency, defendant was prejudiced by not receiving the "benefits" that accompany a plea of GBMI. Defendant contends that but for the errors of his trial counsel, he would have pleaded GBMI.

GBMI is a relatively recent alternative to the already well-known pleas of guilty and not guilty. Having been enacted and made effective in September 1981, GBMI occupies a unique place in our body of law. As this court has noted, a plea or adjudication of GBMI is unlike a verdict of not guilty by reason of insanity in that the defendant is not absolved of criminal responsibility. *People v. Harrison*, 226 Ill. 2d 427, 436 (2007). A plea of GBMI is in that respect far more similar to a plea of guilty. The sentencing range a defendant faces when pleading GBMI is completely unaffected, and, in fact, a defendant who enters a GBMI plea is still eligible to receive the death penalty. *People v. Crews*, 122 Ill. 2d 266, 278 (1988). This is not to say that GBMI is a meaningless option. "The separate verdict [GBMI] helps

clarify for the jury the differences between insanity and mental illness that falls short of insanity." *People v. Lantz*, 186 Ill. 2d 243, 258 (1999). It also allows a jury to identify "offenders who are in need of treatment while they are incarcerated." *Lantz*, 186 Ill. 2d at 259.

The treatment referred to in *Lantz* provides the only discernible difference between a guilty plea and a plea of GBMI. "[U]pon a finding of guilty but mentally ill, the Department of Corrections must 'cause periodic inquiry and examination to be made concerning the nature, extent, continuance, and treatment of the defendant's mental illness' and provide 'such psychiatric, psychological, or other counseling and treatment for the defendant as it determines necessary.' 730 ILCS 5/5–2–6(b) (West 2004)." *People v. Urdiales* 225 Ill. 2d 354, 428 (2007). The Administrative Code lays out the time table for these "periodic" examinations. The Administrative Code states that the Department is to review an inmate who is in a general institutional setting every three months for the first six months in custody and every six months thereafter. 20 Ill. Adm. Code §415.50 (2007) (amended at 29 Ill. Reg. 3883 (eff. March 1, 2005)). While a plea of GBMI guarantees periodic examinations, it does not guarantee treatment. An inmate receives treatment only if, and to the extent, the Department deems such treatment is appropriate. *People v. Kaeding*, 98 Ill. 2d 237, 244-45 (1983). Despite this limitation, these periodic reviews and examinations are the benefits that defendant points to in alleging that he has been prejudiced as a result of trial counsel's deficiency in not investigating or explaining a GBMI plea to him.

The mere presence of a mental illness is not sufficient to guarantee that a court will accept a GBMI plea. Before a plea of GBMI may be accepted, the court must examine the reports of a clinical psychologist or psychiatrist who has examined the defendant, and hold a hearing to determine whether the defendant was suffering from a mental illness at the time of the offense for which the plea is being entered. 725 ILCS 5/113–4(d), 115–2(b) (West 2002). In addition, it is not enough that a defendant has a diagnosable mental illness at the time of the offense. The defendant must have a "*substantial disorder* of thought, mood, or behavior which afflicted a person *at the time of the commission* of the offense *and which impaired that person's judgment*, but not to the extent that he is unable to appreciate the

wrongfulness of his behavior." (Emphases added.) 720 ILCS 5/6–2(d) (West 2002).

Deficient Performance

Defendant alleges that counsel's performance was deficient because counsel failed to investigate and advise him on the possibility of pleading GBMI. Defendant alleges that GBMI provided him a direct benefit and therefore counsel's failure to advise constitutes deficient performance under the *Strickland* analysis. The State argues in response that counsel's performance was admirable in that defendant was adequately advised and had effective mitigating evidence presented. The State further argues that performance was not deficient because trial counsel's actions were tailored to address defendant's primary concern, the length of his sentence. Moreover, the State asserts that there can be no prejudice because there was no basis to establish a GBMI plea.

As a threshold matter, defendant alleges that a plea of GBMI provides a direct benefit and therefore under the language of *Brady v. United States*, 397 U.S. 742, 755, 25 L. Ed. 2d 747, 760, 90 S. Ct. 1463, 1472 (1970), and *People v. Williams*, 188 Ill. 2d 365, 371 (1999), trial counsel was *per se* ineffective for failing to advise defendant of the direct consequences of a GBMI plea. Defendant further argues that the appellate court erred in concluding that the periodic reviews concomitant to plea of GBMI are not a direct benefit of a GBMI adjudication.

However, what both the appellate court and defendant overlook is that the direct-consequences doctrine holds that a defendant must understand the direct results *of the plea he enters.* "[A] trial court's obligation to ensure that a defendant understands *the direct consequences of his or her plea* encompasses only those consequences of the sentence that the trial judge can impose." (Emphasis added.) *Williams*, 188 Ill. 2d at 372. In this case, the benefit defendant alleges arises from the plea of GBMI that he did not enter and not from the guilty plea he actually entered. Therefore, the direct versus collateral distinction is not applicable to the present case.

In order to establish deficiency, a defendant must prove that counsel's performance, as judged by an objective standard of

competence under prevailing professional norms, was so deficient that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). In attempting to establish this deficiency, a defendant must overcome the strong presumption that the challenged action, or lack thereof, might have been the product of sound trial strategy. *People v. Griffin*, 178 Ill. 2d 65, 73-74 (1997). However, the decision of what plea to enter is a right that belongs to the defendant and is not a decision that counsel may make as a part of trial strategy. *People v. Medina*, 221 Ill. 2d 394, 403 (2006), citing *People v. Ramey*, 152 Ill. 2d 41, 54 (1992).

Defendant argues that because the decision of what plea to enter belongs to him, his plea could not be knowing where trial counsel failed to advise him of the possibility of pleading GBMI when it was readily apparent that he might be eligible for GBMI adjudication.

The State, in response, has argued that trial counsel could not have been deficient because there is no basis for the trial court to have accepted a GBMI plea. The State argues that the mere fact that defendant has been diagnosed with a mental illness does not mean that the trial court would have found that he suffered from a "substantial disorder of thought, mood, or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior." 720 ILCS 5/6–2(d) (West 2002). The State notes the cautionary language in the Diagnostic and Statistical Manual of Mental Disorders warning of a significant risk that the diagnostic information within the manual will be misunderstood because of the "imperfect fit between the questions of ultimate concern to the law and the information contained in a clinical diagnosis." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at xxxii-xxxiii (4th ed. 2000). Defendant counters that there is a high likelihood, given his pronounced history of mental-health problems, that the trial court would have accepted a plea of GBMI. This assertion is buttressed by the trial court's sentencing order whereupon it wrote, "[c]ourt recommends that defendant receive substance Ause/psychiatric/psychological treatment while in the penetentiary [*sic*]."

The State further contends that defendant's primary concern was with the length of his sentence and not a desire for periodic reviews or treatment. This assertion is supported by trial counsel's statements at the hearing to withdraw defendant's guilty plea, where she stated that she did not explore the option of GBMI because, unlike a plea of not guilty by reason of insanity, a GBMI plea would not affect the defendant's sentencing range. Defendant's appellate counsel counters that given defendant's statement at sentencing that he was a man in need of help, it is just as likely that he was seeking treatment as that he was seeking a shorter sentence.

The better practice for defense counsel is to inform a defendant of all the potential pleas that are reasonably available to him. This practice is supported by the American Bar Association's Standards for Criminal Justice, which state that the decision of what plea to enter belongs to the defendant "after full consultation with counsel." ABA Standards for Criminal Justice 4–5.2 (3d ed. 1993). The commentary that follows section 4–5.2 reinforces the importance of a defendant making the choice of what plea to enter after being duly advised by counsel. The commentary states that the "requirement that the defendant personally enter a guilty plea and that it be voluntary and informed carries the implication that it is the defendant who must make the choice as to the plea to be entered and, concomitantly, whether to accept a proffered plea agreement. *** In making each of these decisions *** the accused should have the full and careful advice of counsel." ABA Standards for Criminal Justice 4–5.2 (3d ed. 1993).

Although it might be better practice for defense counsel to inform a defendant of all the pleas reasonably available to him, counsel's failure to do so does not necessarily warrant a finding of deficient performance.

"In order to prevail on a claim of ineffective assistance, a defendant must satisfy both the performance and the prejudice prongs of *Strickland*." *People v. Houston*, 226 Ill. 2d 135, 144-45 (2007), citing *People v. Evans*, 209 Ill. 2d 194, 220 (2004). In the present case, even if this court were to conclude that trial counsel was deficient, this would not be dispositive in any event, because defendant suffered no prejudice.

Prejudice to Defendant

The second prong of the *Strickland* test, prejudice to the defendant, must also be satisfied. Before a finding of prejudice can be made, a defendant has to show a "reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." *Pugh*, 157 Ill. 2d at 15. In the present case, however, defendant alleges not that he would have gone to trial, but that absent counsel's deficient performance, he would have pleaded GBMI. Therefore, in this case, a more appropriate burden requires that "[t]he defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Evans*, 186 Ill. 2d at 93; *Houston*, 226 Ill. 2d at 149; *People v. Peeples*, 205 Ill. 2d 480, 513 (2002).

In this case, defendant alleges that counsel's deficient performance rendered his plea not knowing and voluntary and deprived him of the direct benefits of a GBMI adjudication. We begin, accordingly, with an examination of defendant's claims that his plea was neither knowing nor voluntary.

The United States Supreme Court in *Boykin v. Alabama* described a guilty plea as "more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment." *Boykin v. Alabama*, 395 U.S. 238, 242, 23 L. Ed. 2d 274, 279, 89 S. Ct. 1709, 1711 (1969). The Court further stated that "coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality." *Boykin*, 395 U.S. at 243, 23 L. Ed. 2d at 279, 89 S. Ct. at 1712. These concerns from *Boykin* were codified in Supreme Court Rule 402(b) (177 Ill. 2d R. 402(b)), which prescribes that before a court may accept a plea of guilty, the court shall ascertain whether there is an agreement and "shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea."

In the present case, there was no agreement and there is no argument that any undue influence, force, or other promise was involved. Thus, there is no basis to conclude that defendant's plea was involuntary. However, whether the plea was knowing is a separate inquiry.

In *Boykin*, the Court identified three constitutional rights that are implicated by a guilty plea. They are: the privilege against self-incrimination; the right to trial by jury; and the right to confront one's accusers. *Boykin*, 395 U.S. at 243, 23 L. Ed. 2d at 279, 89 S. Ct. at 1712. The Court noted that the best way to insulate a guilty plea from subsequent attack is for the trial court to conduct an on-the-record examination in an attempt to " 'satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.' " *Boykin*, 395 U.S. at 244 n.7, 23 L. Ed. 2d at 280 n.7, 89 S. Ct. at 1713 n.7, quoting *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 105-06, 237 A.2d 196, 197-98 (1968). This language in *Boykin* was the primary reason behind the enactment of Rule 402. See *People v. Whitfield*, 217 Ill. 2d 177, 188 n.3 (2005). See also 177 Ill. 2d R. 402, Committee Comments, at lxxvii.

Rule 402 requires the court to address the defendant in open court, prior to the acceptance of guilty plea, both to inform the defendant and to ensure that the defendant understands:

> "(1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; (3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty; and (4) that if he pleads guilty there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him; or that by stipulating the evidence is sufficient to convict, he waives the right to a trial by jury and the right to be confronted with any witnesses against him who have not testified." 177 Ill. 2d R. 402.

In this case, the record reflects that the court admonished defendant on each of these elements and that the defendant acknowledged his understanding. Thus, the record demonstrates that defendant knowingly entered a plea of guilty with full knowledge of the nature of the charge, the potential sentencing range, the right to plead not guilty, and the right to have a trial by jury.

However, actual knowledge of the plea entered is not the basis of defendant's claim. Defendant claims that he was prejudiced by not being informed about the GBMI alternative. This court has previously had the opportunity to examine the impact of an attorney's failure to advise a defendant on an important, albeit nondirect, consequence of a guilty plea. In *People v. Huante*, this court concluded that defense counsel's failure to advise a criminal defendant on the deportation consequences of a guilty plea did not amount to ineffective assistance of counsel. *People v. Huante*, 143 Ill. 2d 61 (1991). *Huante* distinguished itself from the earlier case of *People v. Correa*, where the court held that defense counsel's erroneously advising the defendant that he would not be deported was ineffective assistance. *People v. Correa*, 108 Ill. 2d 541 (1985).

The present case is analogous to *Huante*. In *Huante*, the court held that an attorney's failure to provide any advice on deportation was not sufficient to show ineffective assistance of counsel. In the present case, trial counsel did not provide defendant with any advice on pleading GBMI. While the distinction between direct and collateral consequences is not directly implicated in the present case, the reasoning is nonetheless compelling. The court in *Huante* stated that "a defendant's awareness of collateral consequences, including deportation, is not a prerequisite to the entry of a knowing and voluntary plea of guilty." *Huante*, 143 Ill. 2d at 71. Similarly, in this case, defendant's lack of information about the GBMI plea is not sufficient to render his plea of guilty unknowing or involuntary.

Additionally, defendant is not prejudiced because the record fairly reflects that defendant's primary concern was the length of his incarceration and not the nature thereof. Trial counsel testified that defendant wanted a sentence of between 8 and 10 years and brought the subject up at several meetings. Trial counsel advised defendant that a sentence of this length was not a realistic expectation and that he should be happy if he received a sentence of 15 years. When asked why she did not explore a plea of GBMI with defendant, trial counsel testified that "the plea of guilty but mentally ill it's not like an insanity defense where it exonerates the person or it makes them–having a different sentencing range than someone else. *** But in this case, it would not change the sentencing range; it was still 6-to-30 years." Thus, defendant's own trial counsel believed that defendant's primary

concern was the length of his sentence. Because the sentencing range is the same under either GBMI or guilty, defendant was not prejudiced by not being advised of GBMI, as the difference could have no impact on his length of incarceration. See *Crews*, 122 Ill. 2d at 278.

Finally, even if we accepted defendant's argument that he would have pleaded GBMI had he been aware of GBMI, there is still no prejudice, as in this case there is virtually no difference in the treatment that defendant will receive under GBMI as opposed to a guilty plea. The eighth amendment to the United States Constitution requires that inmates receive adequate medical care. *McNeil v. Brewer*, 304 Ill. App. 3d 1050, 1053 (1999), citing *Estelle v. Gamble*, 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); *Farmer v. Brennan*, 511 U.S. 825, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). This requirement has been extended to include not just physical-health care, but mental-health care as well. *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994); *Robert E. v. Lane*, 530 F. Supp. 930, 939 (N.D. Ill. 1981).

In addition to the constitutional obligation of mental-health treatment, the Illinois Administrative Code also prescribes that the Department provide mental-health services to inmates (20 Ill. Adm. Code §415.40 (2007) (amended at 29 Ill. Reg. 3883 (eff. March 1, 2005)) ("Persons committed to the Department shall have access to mental health services as determined by a mental health professional")), and that inmates be informed on how to access these services (20 Ill. Adm. Code §415.30 (2007) (amended at 31 Ill. Reg. 9842 (eff. July 1, 2007)) ("Offenders shall be informed of the institutional procedures for obtaining *** mental health services")).

Defendant appropriately points out that the duty imposed on the Department under the eighth amendment is not the same as the concomitant duty of periodic examination that is imposed by a GBMI adjudication. Under the eighth amendment, prison officials are only liable for their subjective deliberate indifference to an inmate's health. *Farmer*, 511 U.S. at 834-35, 128 L. Ed. 2d at 823-24, 114 S. Ct. at 1977-78. Under a GBMI adjudication, the Department has an affirmative duty to examine each defendant who is found GBMI whether he is currently exhibiting symptoms of mental illness or not. 730 ILCS 5/5–2–6 (West 2002).

However, the Department's duty to examine a GBMI defendant does not equate to a duty for the Department to provide treatment to that individual. As previously stated, an inmate receives treatment only if, and to the extent, the Department deems such treatment necessary. 735 ILCS 5/5–2–6(b) (West 2002) ("The Department of Corrections shall provide such psychiatric, psychological, or other counseling and treatment for the defendant as it determines necessary"). See also *Kaeding*, 98 Ill. 2d at 244-45. The language of the GBMI statute that requires treatment to the extent the Department "determines necessary" comports with the provision of mental-health treatment for all inmates, which requires inmates have access to mental-health care "as determined by a mental health professional." 20 Ill. Adm. Code §415.40(a) (2007) (amended at 29 Ill. Reg. 3883 (eff. March 1, 2005)). Thus, the level of care required to be given to all inmates is the same level of care that the Department is required to provide to GBMI inmates.

Further, the periodic reviews and care deemed necessary by the reviews are at the sole discretion of the Department. The GBMI statute does not require the Department to report to the court on a defendant's reviews, treatment, or progress. Thus an adjudication of GBMI does not even enhance a defendant's access to the courts or his ability to judicially challenge the course or denial of his treatment.

Nonetheless, defendant contends that the loss of GBMI's periodic examinations is itself prejudice. This argument fails for the following four reasons. First, the Department is specifically required to provide mental-health services to all inmates (20 Ill. Adm. Code §415.40 (2007) (amended at 29 Ill. Reg. 3883 (eff. March 1, 2005))), and to inform all inmates how to access these services (20 Ill. Adm. Code §415.30 (2007) (amended at 31 Ill. Reg. 9842 (eff. July 1, 2007))). Second, all inmates are evaluated when they reach the Department's reception and classification center in order to determine the inmate's proper assignment to the appropriate correctional facility or program. This evaluation takes into account all relevant factors, including the inmate's "health care condition." 20 Ill. Adm. Code §503.20(b) (2007) (amended at 11 Ill. Reg. 11502 (eff. July 1, 1987)). Third, even if the administrative code were changed to eliminate such care, the eighth amendment would still provide identical guarantees of care. Defendant has noted that under the eighth amendment, prison officials

must be deliberately indifferent to defendant's needs before they can be held liable. *Farmer*, 511 U.S. at 835, 128 L. Ed. 2d at 824, 114 S. Ct. at 1977-78. In the present case, the Department has affirmative knowledge of defendant's mental-health issues. The trial court's sentencing order, the medication proscribed to defendant by Dr. Corcoran at the county jail, the presentence report, and the report of Dr. Murray give the Department affirmative knowledge of defendant's mental-health issues. Having affirmative knowledge, the Department is then required under the terms of the eighth amendment to provide the reasonably necessary treatment that defendant requires, just as it would be required to provide treatment it deemed necessary under a plea of GBMI. 730 ILCS 5/5–2–6(b) (West 2002). In fact, defendant's counsel conceded at oral argument that the Department has affirmative knowledge of defendant's mental-health issues in this case and that the treatment defendant will receive is not markedly different from the treatment he would have received had he pleaded GBMI. Finally, despite the loss of automatic periodic evaluations under GBMI, there is nothing to suggest that an ordinary inmate cannot seek an evaluation absent a GBMI adjudication. Instead, the opposite is true. The Department has an obligation under its own rules to inform defendant of the means of accessing mental-health services while in the Department. 20 Ill. Adm. Code §415.30 (2007) (amended at 31 Ill. Reg. 9842 (eff. July 1, 2007)).

Because GBMI does not alter the sentencing range defendant is eligible to receive, guarantee a higher level of treatment than an ordinary inmate, or guarantee access to treatment that would otherwise be foreclosed to defendant, defendant is not prejudiced by the loss of the opportunity to have pleaded GBMI. Further, defendant has failed to show that trial counsel's alleged deficiencies rendered defendant's plea of guilty unknowing or involuntary. Because no prejudice has been shown, defendant has failed to meet his burden under the second prong of the *Strickland* analysis.

CONCLUSION

In the present case, defendant has failed to show that trial counsel's failure to inform him of the possibility of pleading GBMI resulted in any prejudice. Defendant has failed to demonstrate a lack of knowledge or voluntariness as to the plea of guilty that he entered.

-17-

Further, a plea of GBMI would have no effect on either the sentence defendant was eligible to receive, or defendant's mental-health treatment. Thus, the defendant is unable to prove prejudice as required under the second prong of the *Strickland* analysis. Therefore, we affirm the judgment of the appellate court.

*Affirmed.*