NOTICE

Decision filed 09/03/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230704-U

NO. 5-23-0704

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 21-CF-36 |
| | ) | |
| FRANK BIESER, | ) | Honorable |
| | ) | Christopher W. Matoush, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where the record indicates that defendant received ineffective assistance of plea counsel, we vacate defendant's convictions and remand this cause with directions to allow defendant to plead anew.

¶ 2    The defendant, Frank Bieser, appeals the Clinton County circuit court's denial of his motion to vacate his guilty plea. On appeal, defendant argues that (1) the circuit court abused its discretion by denying his motion to withdraw guilty plea, (2) he was denied the effective assistance of counsel during the postplea proceedings based upon his attorney's conflict of interest, and (3) despite the filing of a facially valid Rule 604(d) certificate, the record reflects that postplea counsel did not adequately present the defects in the plea proceedings to the trial court. For the reasons that follow, we reverse the circuit court's order denying defendant's motion to withdraw

1

guilty plea, vacate defendant's conviction and sentence, and remand with directions to allow defendant to plead anew.

¶ 3                                    I. BACKGROUND

¶ 4      On February 5, 2021, defendant was charged by information with four felonies. Counts I and II alleged defendant committed the offenses of aggravated possession of stolen vehicles, Class 1 felonies, in violation of section 4-103.2(a)(1) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/4-103.2(a) (West 2020)); counts III and IV alleged defendant committed the offenses of possession of stolen vehicle, Class 2 felonies, in violation of section 4-103(a)(1) of the Vehicle Code (*id.* § 4-103(a)(1)).[1] An amended information containing the same charges was filed on September 13, 2021.

¶ 5      On June 8, 2022, defendant entered a fully negotiated plea to counts III and IV. Counts I and II were dismissed. Pursuant to the plea agreement, defendant was to be placed on probation for 24 months and ordered to pay $3000 in fines plus costs. Defendant was represented by private counsel. During the admonitions pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012), the following exchange took place:

> "THE COURT: Now, as a collateral effect, you understand that I'm not sure that a possession of a—possession of a stolen vehicle may have a collateral effect on your driver's license. Do you understand that?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: [Defense counsel]?
>
> [DEFENSE COUNSEL]: I do not believe that it does.

---

[1]The charging document and the parties refer to the offenses being possession of a stolen motor vehicle. The statute itself refers to the charge as "[o]ffenses relating to motor vehicles and other vehicles." 625 ILCS 5/4-103 (West 2020). Consistent with the charging document, we will refer to defendant's charges as "possession of stolen motor vehicle."

THE COURT: Okay. All right. I just wanted to make sure. [Defense counsel] doesn't believe it does, but it's a felony involving a motor vehicle. So I just wanted to make sure you understand that it does involve a motor vehicle. And I want to make sure you understand that if—

THE DEFENDANT: I understand. I understand I may lose my wholesale license for this, yes, I do.[2]

THE COURT: All right. And you pled guilty because you are guilty, sir, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with the services of your attorney ***?

THE DEFENDANT: Yes.

THE COURT: All right. I find a knowing and voluntary plea of guilt."

During the factual basis for the plea, the State represented that, based upon information that he received about a stolen van, Kyle Schulte, an employee of the sheriff's department, visited with an individual named Randolph Oberneufmann. Obernuefmann told Schulte that defendant dropped the van off two or three weeks earlier. With Obernuefmann's consent, Schulte searched the van and found mail belonging to defendant in the van. The van had been stolen in St. Louis in 2014. In response to information that he received about a stolen side-by-side, Schulte visited the home of Wayne Worms and Hailene Clark. There he found a repainted side-by side, the vehicle identification number of which matched a side-by side stolen from Wayne County, Missouri. After waiving their *Miranda* rights, Worms and Clark told officers that "he brought it over about three

_____

[2]It is apparent from the record that, in addition to a driver's license, defendant had a "wholesale license" to buy and sell motor vehicles, and that defendant understood that his wholesale license would be revoked as a result of the plea bargain.

3

weeks prior asking to store it." The circuit court accepted defendant's guilty plea and sentenced defendant pursuant to the terms of the plea agreement.

¶ 6 On June 28, 2022, in response to receiving a notice from the Illinois Secretary of State that his driving privileges were being revoked as a result of his conviction,[3] defendant, through counsel, filed a motion to withdraw his guilty plea. The motion stated that defendant was "unaware that his [driver's] license could be suspended or revoked as a result of" the plea. The motion further stated that had defendant "been aware of all information and consequences, he would have proceeded in a different manner," and that defendant "did not knowingly, intelligently, or voluntarily waive his right to a trial." The motion did not contain any other claims of error in the plea proceedings.

¶ 7 The circuit court held a hearing on defendant's motion to withdraw guilty plea on December 14, 2022. Defendant testified as follows on direct examination:

"Q. [Defense counsel]: Do you remember pleading guilty to the charge, the one that we're here for today?

A. [Defendant]: Yes, I do.

Q. Do you remember discussing an issue of licenses?

A. Yes, we did.

Q. What license did you believe you were discussing that day?

A. My driver's license.

Q. Were we discussing any other licenses on the record that day?

_____

[3]The parties agree that defendant had his driving privileges revoked pursuant to section 6-205 of the Vehicle Code. 625 ILCS 5/6-205 (West 2020). We note that this statute was not specifically referenced in the report of proceedings, and although a copy of defendant's notice of revocation from the Secretary of State was admitted as an exhibit in the circuit court, a copy of that exhibit was not provided in the record on appeal.

A. I said—I said my dealer's license, yes. But, I mean, the big thing is my driver's license. It's—it has just crippled me on making money and running my business.

Q. Sorry. Did we discuss both of those on the—on the record that day?

A. I believe—I thought we was talking about my driver's license, period, that day.

Q. Is it possible you don't remember correctly?

A. We might have talked about it in the hallway but I, you know, I—I was intentions [*sic*] it was my driver's license.

Q. Your Honor, permission to approach?

THE COURT: You may.

Q. [Defense counsel]: I am currently handing you what is labeled Defendant's Exhibit 3. Does that refresh your memory about what happened on the record?

A. I remember the Judge bringing this up and then we sat there and talked about it. You said it wouldn't apply to me.

Q. So at the time of the plea, did you believe you could lose your driver's license as a result of the plea?

A. No.

Q. Did you believe you could lose your wholesale license?

A. I though I would keep my license but—

Q. Did you believe you could lose your wholesale license at the time of the plea?

A. Yes, I did.

\* \* \*

Q. Have you lost your driver's license as a result of the plea?

A. Yes, I have."

5

The State introduced a certified copy of defendant's driving record which indicated that defendant's driver's license expired but had not been suspended or revoked. At defendant's request, the hearing was continued so defendant could either obtain his license (if it was only expired) and withdraw his motion to withdraw guilty plea, or alternatively, confirm the revocation and have the court rule on the motion to withdraw guilty plea.

¶ 8 Further hearing was held on February 3, 2023. The State represented that it ran defendant's driving record again. The record showed that defendant was revoked, effective June 24, 2022, for being convicted of a felony offense in which a motor vehicle had been used. Defense counsel indicated that defendant was proceeding with his motion to withdraw guilty plea. The circuit court denied defendant's motion, noting that it admonished "defendant that there could be collateral effects to his driver's license." The court explained:

"[Defense counsel], back at the negotiated plea, indicated that he did not believe, after the Court had indicated that there could be collateral effects on the driver's license, that that would be the case with regards to [defendant]. *** [A]s the Court again tried to emphasize the fact that this was a felony matter involving a motor vehicle, [defendant] interrupted the Court and indicated that he understood that apparently his wholesale license would be revoked.

Bottom line, *** this Court did admonish him and put him on notice of the collateral effect with regards to his driver's license, the fact that he possibly misunderstood or was—did not believe that that would—even though there could have been that effect, that the result would actually be a revocation of his license, I find that he did have that notice.

Looking at the facts of this case, the proffer or probable cause and all other matters, it's the defendant's burden to prove or to show that there would be a manifest injustice under the facts that such a misapprehension of the facts of the case or the law or doubt to be of guilt, I do not find that the defendant has shown such, that a manifest injustice has occurred.

For the reasons, in essence, that I have highlighted, therefore I do not—I do find that the nature of the plea was knowing and voluntary. Motion to withdraw the plea is denied at this time."

¶ 9     Defendant filed a timely notice of appeal on March 1, 2023. Because defense counsel failed to file a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) in the circuit court, this court entered an order on August 3, 2023, vacating the denial of defendant's motion to withdraw guilty plea and remanding the matter for further proceedings.

¶ 10     Another hearing was held on September 15, 2023, and defendant was again represented by the same attorney. Although a Rule 604(d) certificate was filed, defense counsel did not amend or file a new motion to withdraw guilty plea. Defense counsel asked the court to take judicial notice of the prior hearings and adopted his prior argument. No new argument was made on defendant's behalf. The court denied defendant's motion "for the same reasons that I had went over in length at the last motion hearing." A notice of appeal was filed the same day.

¶ 11                                    II. ANALYSIS

¶ 12     Defendant argues that the circuit court committed reversible error by refusing to allow him to withdraw his guilty plea when the record demonstrates that he received ineffective assistance of counsel at the time of the guilty plea. Defendant alleges that defense counsel was ineffective because counsel misunderstood that a collateral consequence of the plea was the loss of

7

defendant's driving privileges, and in fact advised defendant that he did not believe defendant would lose his driver's license as a result of the plea. Because defendant was not aware of the collateral consequences that the plea would have on his driving privileges, defendant argues that his plea was not truly knowing and voluntary. We agree.

¶ 13 "A defendant does not have an automatic right to withdraw [his] guilty plea, as '[a] plea of guilty is a grave act that is not reversible at the defendant's whim.' " *People v. Burge*, 2021 IL 125642, ¶ 37 (quoting *People v. Reed*, 2020 IL 124940, ¶ 47). "Rather, a defendant must establish a manifest injustice under the facts involved." *Id.* "A guilty plea may be withdrawn where it was entered through a misapprehension of the facts or the law or where there is a doubt as to the guilt of the accused and justice would be better served by conducting a trial." *Id.* "In order to vacate a plea based upon a misapprehension of law or fact, the defendant must establish, under an objective standard, that [his] mistaken beliefs or impressions were reasonably justified under the circumstances as they existed at the time of the plea." *Id.* "[T]he decision whether or not to allow a defendant to withdraw his guilty plea is a matter within the discretion of the trial court and will not be disturbed absent an abuse of that discretion." *People v. Manning*, 227 Ill. 2d 403, 411-12 (2008). "Where the plea of guilty was entered *** in consequence of misrepresentations by counsel *** the court *should permit* the withdraw of the plea of guilty and allow the accused to plead not guilty." (Emphasis in original and internal quotation marks omitted.) *Id.* at 412. "A defendant may challenge the constitutionality of his guilty plea *** by alleging that the plea of guilty was not made voluntarily or with full knowledge of the consequences." *Id.*

¶ 14 The sixth amendment guarantees a defendant the right to effective assistance of counsel at all critical stages of criminal proceedings, including the entry of a guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 44 (citing *Missouri v. Frye*, 566 U.S. 134, 140 (2012)). "To establish a claim

8

of ineffective assistance of counsel in the plea process, the defendant must show counsel's performance was deficient and that the deficient performance resulted in prejudice." *Id.* (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "More specifically, a defendant must prove that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). A defendant must meet both prongs of the *Strickland* test to prevail on a claim of ineffective assistance of counsel. *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 15    Relevant to this matter, Illinois courts distinguish the differences between the "direct consequences" of a guilty plea and the "collateral consequences" of a guilty plea. "A direct consequence of a guilty plea is one which has a definite, immediate and largely automatic effect on the range of a defendant's sentence." *Hughes*, 2012 IL 112817, ¶ 35. "A trial court's obligation to ensure that a defendant understands the direct consequences of his plea traditionally encompasses those consequences that affect the defendant's sentence and other punishment that the circuit court may impose." *Id.* "A collateral consequence is one which the circuit court has no authority to impose, and results from an action that may or may not be taken by an agency that the trial court does not control." (Internal quotation marks omitted.) *Id.* ¶ 36. Generally speaking, a court is not required to advise a defendant regarding the collateral consequences of his plea. *Id.* A license suspension or revocation as a result of guilty plea is a collateral consequence. *Id.* "It is well settled that plea counsel's failure to advise of a collateral consequence does not provide a basis to invalidate the plea." *People v. Boyd*, 2018 IL App (5th) 140556, ¶ 20. As noted in *Boyd*, however, "if plea counsel gives wrong or incorrect advice, even as to a collateral consequence of the plea,

and the defendant relies on that advice in making the decision to plead guilty, the counsel's performance falls below an objective standard of reasonableness and amounts to ineffective assistance." *Id.* (citing *People v. Correa*, 108 Ill. 2d 541, 552 (1985)). A defendant has the burden of establishing that his plea was not knowingly given due to counsel's deficiency. *Hughes*, 2012 IL 112817, ¶ 62.

¶ 16 Defendant argues that defense counsel's representation fell below an objective standard of reasonableness, because counsel gave him the wrong advice regarding whether his driving privileges would be revoked as a result of his plea. The State argues that defense counsel's advice was not objectively unreasonable, and, therefore, does not meet the first prong of the *Strickland* standard. In support of its argument, the State relies on section 6-205 of the Vehicle Code, which provides that the Illinois Secretary of State "shall immediately revoke" the driving privileges upon receiving a report of a driver's conviction for "[a]ny felony under the laws of any State or the federal government in the commission of which a motor vehicle was *used*." (Emphasis added.) 625 ILCS 5/6-205(a)(3) (West 2020). The State further notes that the statute under which defendant was convicted, section 4-103(a)(1) of the Vehicle Code (*id.* § 4-103(a)(1)), uses the words "receive, possess, conceal, sell, dispose, or transfer" in relation to the motor vehicle, but it does not contain the words "use" or "uses." For this reason, the State asserts that "a simple review of the statute would not necessarily lead a reasonable attorney to believe that a conviction for possession of a stolen motor vehicle would result in the revocation of defendant's driver's license."

¶ 17 Defendant responds that criminal defense attorneys should know that the word "use" in a statute may be employed in a broad sense and cites the unlawful use of weapons statute for this proposition. See 720 ILCS 5/24-1(a)(1) (West 2020) ("A person commits the unlawful use of weapons when he knowingly *** [s]ells, manufactures, purchases, possesses or carries ***.").

10

Defendant argues that a "reasonable attorney would, at best, find the [possession of a stolen motor vehicle] statute ambiguous," and notes that defense counsel did not mention any ambiguity, but rather told defendant that the statute "wouldn't apply" to him. Defendant also argues that section 6-205 of the Vehicle Code requires the Secretary of State to revoke the license of a person convicted of possessing a stolen motor vehicle (625 ILCS 5/6-205 (West 2020)) and cites caselaw to demonstrate that Illinois drivers have been subjected to this collateral consequence for felony offenses relation to motor vehicles for "decades." See *People v. Viverette*, 2016 IL App (1st) 122954, ¶ 4 ("[Defendant's] driver's license was revoked on September 2, 1989, following a conviction for possession of a stolen motor vehicle."). Finally, defendant notes that the National Inventory of Collateral Consequences of Conviction references a relationship between section 4-103 and section 6-205 of the Vehicle Code, demonstrating that the collateral consequence of the revocation of a driver's license for a conviction under section 4-103 is easily verified.[4]

¶ 18 We agree that defense counsel's performance fell below an objective standard of reasonableness when he misinformed defendant regarding the collateral consequences of his plea. That a conviction for possession of a stolen motor vehicle would lead to the loss of defendant's driving privileges was "straightforward and readily verifiable," and "there is no objectively reasonable justification for counsel's erroneous advice." *People v. Brown*, 2017 IL 121681, ¶ 27. While the revocation of defendant's driving privileges is a collateral consequence of defendant's convictions, the fact that defense counsel affirmatively gave erroneous advice to defendant, and

_____

[4]See https://niccc.nationalreentryresourcecenter.org/consequences/35481. The *Hughes* court also referenced this database, noting that the existence of databases that "will ease the burden on defense counsel" in advising clients on the collateral consequences of their convictions. *Hughes*, 2012 IL 112817, ¶ 58.

11

that defendant reasonably relied on that advice in making the decisions to plead guilty, means that counsel was ineffective. *Boyd*, 2018 IL App (5th) 140556, ¶ 20.

¶ 19    The State contends that, irrespective of defense counsel's erroneous belief, the circuit court's admonishments to defendant put him on notice that there could be collateral consequences to his driving privileges as a result of the plea. Based upon its oral pronouncements at the time that it denied defendant's motion to withdraw guilty plea, it is apparent that the court also believed it provided defendant with adequate notice regarding the potential loss of his driver's license. In denying defendant's motion, the court noted that it had told defendant "that there could be collateral effects on [defendant's] driver's license," and that defense counsel indicated that he did not believe that to be the case. The court further noted that "as the Court again tried to emphasize the fact that this was a felony matter involving a motor vehicle, [defendant] interrupted the Court and indicated that he understood that apparently his wholesale license would be revoked." The court concluded that it had put defendant on notice of the collateral consequence while acknowledging "the fact that [defendant] possibly misunderstood or was—did not believe that that would—even though there could have been that effect, that the result would actually be a revocation of his license."

¶ 20    Defendant counters that the circuit court's admonishment that it was "not sure" that "possession of a stolen vehicle may have a collateral effect on [defendant's] driver's license" was not only equivocal, but also preceded defense counsel's erroneous advice, was not enough to cure defense counsel's deficient advice. We agree with defendant.

¶ 21    The circuit court told defendant that a collateral consequence of the plea "may" be the loss of defendant's driver's license, but in the same sentence indicated that it was "not sure." The court then asked defense counsel for input on the matter, and defense counsel replied, "I do not believe

that it does." While it is accurate that defendant interrupted the court as it tried to explain that the charges were felonies involving motor vehicles, the defendant's statement was that he understood that he would lose his wholesale license. No attempts were made to correct either defense counsel's misunderstanding of the law or defendant's misunderstanding of the collateral consequence as it pertained to his driver's license. We do not believe that the court's admonishments to defendant were enough to correct defense counsel's misrepresentation of the law. See *People v. Morreale*, 412 Ill. 528, 533-34 (1952) (full and proper admonishments from the trial court regarding the consequences defendant's plea "did not have the effect of obliterating from [defendant's] mind that the previous representations made to him would avail"). Our finding is supported by the court's own statement during its ruling on defendant's motion, where the court acknowledged "that [defendant] possibly misunderstood" that the loss of his driver's license would be a consequence of the plea. Defense counsel's deficient performance satisfies the first prong of the *Strickland* test.

¶ 22    Having determined that defendant met the first prong of the *Strickland* test, and that the court's admonishment to defendant failed to correct defense counsel's deficient performance, we now consider whether defendant has suffered any prejudice. A defendant must demonstrate prejudice as a result of counsel's deficient performance before he is entitled to relief. *People v. Valdez*, 2016 IL 119860, ¶ 29, "To establish prejudice in the guilty plea context, 'the defendant must show that there is reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Id.* (quoting *Hill*, 474 U.S. at 59). "A conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice." *Id.* (citing *Hughes*, 2012 IL 112817, ¶ 64). "Rather, *** 'to obtain relief on this type of claim, a [defendant] must convince the court that a decision to reject

13

the plea bargain would have been rational under the circumstances.' " *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

¶ 23    In this case, defendant has presented more than a conclusory allegation that he would not have pled guilty to the charges had he known that he would lose his driver's license as a consequence. Upon learning of the revocation, defendant promptly filed a motion to withdraw guilty plea. At the first hearing on the motion, defendant testified that "the big thing is my driver's license," and explained that the loss of his driving privileges "crippled" his ability to run his business and to earn an income. There was also evidence that defendant and defense counsel discussed the issue of his driver's and wholesale licenses prior to the plea. Additionally, as noted above, counsel erroneously asserted during the plea itself that he did not believe that the conviction would have a collateral effect on defendant's driver's license.

¶ 24    Since we have concluded that the record in this matter contains more than a conclusory allegation that, but for defense counsel's misrepresentation of the law, defendant would not have pleaded guilty to the charges and would have insisted on going to trial, we must next consider whether " 'a decision to reject the plea bargain would have been rational under the circumstances.' " *Id.* (quoting *Padilla*, 559 U.S. at 372). In this regard, it is appropriate for the court to "examine the circumstances surrounding [a defendant's] plea." *Brown*, 2017 IL 121681, ¶ 49. In making this determination, "it is appropriate to compare the consequences of a defendant's conviction following a trial to the consequences of the defendant entering the guilty plea." *Id.* ¶ 36 (citing *Lee v. United States*, 582 U.S. 357, 367 (2017)).

¶ 25    According to the State, the factual basis suggests that there is a high probability that defendant would have been convicted if he had rejected the plea, and had defendant gone to trial, he could have received up to 15 years in the Illinois Department of Corrections if he were convicted

14

of the charges in either count I or count II, aggravated possession of stolen motor vehicles, both Class 1 felonies. See 730 ILCS 5/5-4.5-30 (West 2020). For these reasons, the State contends that it would have been unreasonable of defendant to reject the plea agreement of probation and fines.

¶ 26    Defendant counters that, based upon the factual basis, there is no guarantee that he would have been convicted, noting that there was nothing in the factual basis about defendant confessing to the offenses or making incriminating statements regarding the charges, nothing about the condition of the vehicles that would suggest to a reasonable person that the vehicles were stolen, and that defendant was not found in, around, or near the vehicles at the time that they were recovered. Instead, defendant observes that the vehicles were found in the possession of other people, and the only evidence connecting defendant to the vehicles other than some mail found in one of them "was the word of individuals who were being questioned by officers who had just recovered the stolen vehicles on their respective properties." At least one set of the homeowners where a vehicle had been found had been read *Miranda* rights before telling the police that defendant had brought the vehicle to their home about three weeks earlier.

¶ 27    Regarding the possible sentence defendant could have faced had he been convicted following a jury trial, defendant notes that his criminal record only includes a sentence of court supervision for a prior driving under the influence charge, and that defendant still would have been eligible for a sentence of probation, even if convicted of all the charges. See *id.* §§ 5-4.5-30, 5-4.5-35. Defendant contends that this is true even though his sentence range would have been greater if he had been convicted of the more serious charges in counts I and II. Although not argued, we note that a sentence of probation is presumed for these offenses. See *id.* § 5-6-1.

¶ 28    Considering the circumstances surrounding his plea, and the misinformation that defendant received from his attorney, we find that defendant met the prejudice prong of the *Strickland* test.

15

Defendant made it clear that keeping his driver's license was of paramount importance to him and his ability to earn income. The record supports defendant's assertion that he would not have pled guilty had he been provided with correct legal advice. In short, the record supports a finding that, in deciding whether to accept the plea offer, defendant made a calculation that he could accept the loss of his wholesale license, but that he needed to keep his driver's license. Because there is a reasonable probability that defendant would have proceeded in a different manner had he received the correct legal advice of defense counsel, defendant has demonstrated prejudice, thus satisfying the second prong of the *Strickland* test.

¶ 29    Based upon the foregoing, we find defendant's guilty plea was not knowingly and voluntarily given due to ineffective assistance of counsel during the plea process, specifically that defense counsel told defendant that the plea would not cause the loss of defendant's driving privileges. "Considering defendant has satisfied both prongs under *Strickland*, we find the trial court abused its discretion in denying his motion to withdraw plea of guilty." *Boyd*, 2018 IL App (5th) 140556, ¶ 23. In light of this disposition, we need not consider defendant's remaining arguments on appeal.

¶ 30                                III. CONCLUSION

¶ 31    For the reasons stated above, we reverse the judgment of the circuit court of Clinton County denying defendant's motion to withdraw his guilty plea. Accordingly, we vacate defendant's guilty pleas of guilty and sentences, and remand this case with directions to allow defendant to plead anew.

¶ 32    Reversed and remanded with directions.